BREMMER VS. THE GREEN BAY, STEVENS POINT & NORTHERN
RAILROAD COMPANY.

*September 6 — September 23, 1884.*

*(1) Railroads: Fences: Injury to animals.   (2) Reversal of judgment:
Improper remarks of counsel to jury.*

1. Under sec. 1810, R. S. (ch. 193, Laws of 1881), in order to recover
for the negligent killing of an animal upon a railroad track at a
point where it was unfenced, the owner must show that such ani-
mal *got upon the track* at a point where the company was bound
to maintain a fence and had neglected to do so.   So, where there
was nothing in the evidence to show that the animal did not go
upon depot grounds, which the company was not bound to fence,
and thence along the track to the place where it was killed, a non-
suit should have been granted.

2. Remarks of counsel to the jury, appealing to prejudices foreign to
the case in evidence, persevered in after a reprimand by the court,
may be good ground for a reversal.

APPEAL from the Circuit Court for *Portage* County.

The case is thus stated by Mr. Justice CASSODAY:

"This action is for the value of a cow killed June 14,
1882, by a passing locomotive of the defendant on its rail-
road, at a point about 2,300 feet northwest of the defendant's
depot, in the village of Plover.   It was originally brought
in justice's court, and taken to the circuit court on appeal.

"The railroad had been in operation for more than three
months, but had not been fenced at the point where the cow
was killed.   The evidence on the part of the plaintiff tends
to show that he had been in the habit of keeping his cow
nights at his barn, situated on the west side of his block and
fronting to the west, and which barn was a few rods north
of defendant's railroad track running east from its depot,
and about 700 feet east, or a very little north of east, from
its depot; that the lands between the front of the plaintiff's
barn and the railroad track on the south and the depot on
the west, or a little south of west, were unfenced and open

to the common; that the tracks of the defendant's railroad immediately west and northwest of its depot formed a Y, and that in and about the Y, and for a long distance west and northwest of the depot, and for a long distance north and west of all the tracks of the defendant's railroad, there were no fences, but the lands were wholly open to the common; that the place where the cow was killed was about 1,800 feet northwest from the depot grounds; that west and northwest of where the cow was killed was unfenced and open to the common; that east of the track where the cow was killed was unfenced and open to the common as far as the main street, in Plover, running north and south, and which passed on the easterly side of the plaintiff's block, on the west side of which the barn was situated. The plaintiff turned his cow out into the street on the west side towards the depot about six o'clock A. M., June 14, 1882, but did not notice in what direction she went. She was killed the same day, about eleven o'clock A. M.

"At the close of the plaintiff's testimony, the defendant moved for a nonsuit, which was overruled, and the defendant excepted. Under all the testimony and the charge of the court the jury returned a verdict for the plaintiff, and from the judgment thereon the defendant appealed."

[The following remark by the plaintiff's attorney in opening the case to the jury, was excepted to by the defendant: "I say that the *Green Bay, Stevens Point & Northern Railway* is a part of the Green Bay, Winona & St. Paul Railroad Company, a wheel within a wheel." The same attorney also read sec. 1810, R. S., to the jury, an objection on the part of the defendant having been overruled.

During the argument to the jury by plaintiff's attorney the following proceedings were had:

*Mr. Lamoreux:* I said to you, gentlemen, that my client was a poor blacksmith, that he was pounding out the means by which he had to pay his proportion of the expense that

the community in which he lived had incurred to aid this railroad company in constructing their road, and that is as far as I care to go upon that point, and I believe I am justified in going that far, inasmuch as the gentleman himself alluded to the merits of railroads in general.

*Mr. Case:* The gentleman has said that his client was trying to work out a tax to pay towards aid for this railroad. The fact is, that this railroad company has never had any aid by the town of Plover. I dislike exceedingly to interrupt counsel, but when he drags in those outside matters, and matters that are false, I think I have a right to ask that counsel be restricted.

*The Court:* The counsel know better and know that they should talk about the law and testimony in the case.

*Mr. Lamoreux:* I then stated to you the position of my client; whether the client that the gentleman represents, has any merits or not I don't care, so far as its general dealings with the community is concerned. I did not intend, and don't now, to urge anything upon you that you are to consider, except the questions that arise upon the issue that is presented to you to try.

*Mr. Case:* I desire here to enter an exception to such language being used, and to the court's remark.]

The cause was submitted for the appellant on the brief of *Theo. G. Case,* and for the respondent on that of *O. H. Lamoreux,* attorney, and *A. W. Sanborn,* of counsel.

For the appellant it was argued, *inter alia,* that the remarks of counsel in which he sought to identify the defendant (a weak company owning but six miles of railroad) with a more wealthy and powerful corporation, were intended to prejudice the jury and convince them that a verdict against the defendant would not hurt it, and should work a reversal. *Brown v. Swineford,* 44 Wis. 291. It was error to permit counsel to read the statutes to the jury. *Tuller v. Talbot,* 23 Ill. 357; *Sprague v. Craig,* 51 id. 288; *Philpot v. Taylor,*

75 id. 309; *Chicago v. McGiven*, 78 id. 347; *People v. Anderson*, 44 Cal. 65. To render the company liable the cow must have *entered* upon the track at a point where a fence was required, and the sufficiency of the fence at the place of entry and not at the place of killing is the material question. *C., B. & Q. R. R. Co. v. Farrelly*, 3 Bradwell, 60; *Bellefontaine R'y Co. v. Suman*, 29 Ind. 40; *I., P. & C. R. W. Co. v. Caudle*, 60 id. 112; *T., W. & W. R. W. Co. v. Stevens*, 63 id. 337; *Wabash R'y Co. v. Forshee*, 77 id. 158; *M. P. R. R. Co. v. Leggett*, 27 Kan. 323; *A. & M. R. R. Co. v. Cash*, id. 587; *Razor v. St. L., I. M. & S. R'y Co.* 73 Mo. 471; *Snider v. St. L., I. M. & S. R'y Co.* id. 463; *J., M. & I. R. R. Co. v. Lyon*, 72 Ind. 107; *Witthouse v. A. & P. R. R. Co.* 64 Mo. 523; *Bennett v. C. & N. W. R'y Co.* 19 Wis. 145; 49 Am. Dec. 270.

CASSODAY, J. We are precluded from considering the only objectionable portion of the charge by the failure to file exceptions or move for a new trial. After a careful examination of the evidence, however, we are inclined to hold that the plaintiff failed in one particular to establish his case, and hence that the nonsuit should have been granted. There was nothing to prevent the cow going from the plaintiff's barn onto the depot grounds, and from thence, along the defendant's railroad track, to the place on the defendant's right of way where she was seen just before she was killed. She seems to have been lying down at the time with a number of other cattle. As the train approached from the north she was seen to jump up from behind a brush-heap and run onto the track, a few feet ahead of the engine. How she came to be on the right of way at that place does not appear. Whether she came from the open common on either side of the track, or came along up the defendant's right of way from the depot grounds, is left by the evidence to mere conjecture.

Of course, the defendant was under obligation to build any necessary cattle-guards and to fence its right of way at the point where the cow was killed, within three months from the time it commenced to operate its road at that point, and was liable, in a proper case, for all damages done to cattle occasioned in whole or in part by the want of such fences or cattle-guards. Sec. 1810, R. S.; ch. 107, Laws of 1880; ch. 193, Laws of 1881; *Curry v. C. & N. W. R'y Co.* 43 Wis. 665. But the damage must be occasioned in whole or in part by the want of such fences or cattle-guards. If the cow came from the depot grounds, which the defendant was not obliged to fence, along the defendant's right of way, to the place where she was killed, then it would not necessarily be occasioned in whole or in part by the want of such fences or cattle-guards. The burden was on the plaintiff to prove that she did not get onto the track at the point of the killing in that way. This was held by this court in *Bennett v. C. & N. W. R'y Co.* 19 Wis. 145. To recover, it was incumbent upon the plaintiff to "show that the animal got upon the track at a point where the company was bound to maintain a fence, but had neglected to do so." *Ibid.*

There seems to be no evidence in the case sufficient to have warranted the jury in finding that the cow was intentionally or wantonly killed. The undisputed evidence clearly shows that the speed of the train was very much slackened as it approached the cattle, and that the engine was reversed when the cow started to cross the track. These things show some degree of care, and the absence of any recklessness or purpose to kill.

The remarks of the plaintiff's counsel, to which exceptions have been taken, were very objectionable, as well after he had been reprimanded by the court as before, and we are inclined to think we should reverse the cause on that ground, if there was no other error. As it is, it becomes unnecessary to consider that question, except to suggest the im-

propriety of its repetition. *Elliott v. Espenhain*, 59 Wis. 277.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

