## Court of Appeals of New York.

### April 18, 1899.

## PEOPLE v. ROBERT W. FIELDING.

1. CRIMINAL LAW—DISTRICT ATTORNEY.

If the district attorney lays aside the impartiality that should characterize his official action to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases to properly represent the public interest. He should put himself under proper restraint, and should not in his remarks, in the hearing of the jury, go beyond the evidence or the bounds of a reasonable moderation.

**2. SAME—REVERSAL.**

Where the admonition of the court does not prove sufficient to prevent improper and dangerous appeals to the prejudice of jurors, it becomes necessary to rigidly enforce the general rule that requires a reversal whenever the error is raised by a proper exception.

**3. SAME.**

In a case that is free from doubt upon the merits, the appellate courts disregard errors of the trial court, even in a criminal case, when it is reasonably certain that they could not have affected the result.

**4. SAME.**

But instructions to the jury do not always neutralize, either as a matter of law or fact, the effect of improper remarks in their presence.

**5. SAME—DEFENDANT'S COUNSEL.**

After persisting in his efforts to protect his client until the court holds that he was out of order, the counsel for defendant is not obliged to run the risk of punishment for contempt by continuing to object.

**6. SAME—ERROR CURED.**

When improper evidence has been received or improper statements made in the presence of the jury, if the court seeks to correct them, the correction should be as broad as the error, and cover substantially the same ground, as was the case in Cole v. Fall Brook Coal Co. (159 N. Y. 59).

**7. SAME.**

A correction does not cure the error, where it does not go far enough and is not sufficiently clear and specific.

APPEAL from judgment of conviction for conniving at the auditing of a fraudulent claim, and from a judgment, affirming a conviction.

Charles J. Patterson, for appellant.

Hiram R. Steele, District Attorney, for the People.

VANN, J.—We think that the record before us is free from reversible error, except as to a single question, which is raised by the following extract from the appeal book, transscribed literally, so that it may speak for itself:   'The district attorney, in summing up, said:   'Defendant changed his style of living from a frame house on Prospect avenue to a palatial residence on Eighth avenue, which every man knows cannot be maintained in the style of that neighborhood for less than ten thousand dollars a year.'   (Objected to.)   The Court:   'There is no

evidence of that.' By the District Attorney : 'I appeal to the common sense of the jury.' The Court ; 'There is no other comment required, than the statement of the fact that there is no evidence in the case as to how much it costs to maintain an establishment on Eighth avenue.' By the District Attorney : ' There is no evidence, but you will not prohibit their using their experience,' etc. In further summing up, he said : ' Go and spend an hour in the tax collector's office the day after the tax levy is confirmed, and look at the long line —' (Objected to by the defendant.) The Court : 'I do not think this interruption is called for.' By Defendant's Counsel : 'I will take an exception, if your honor will permit him to proceed on that line.' The Court : ' I ask to have it taken down. I ask you to stop him at this point, and take an exception.' The Court : ' I cannot do both. I cannot have it taken down and have him stopped, also. Proceed.' By the District Attorney : 'I say, visit the tax office on the day after the annual taxes are confirmed, and look at the long line, that stretches out into and down the street of people that are willing to stand there all day in order to save the little rebate which early payment secures. Those people are the victims of the defendant's fraud.' By Defendant's Counsel : 'Does your honor permit him to proceed in this fashion ?' The Court : ' Yes.' By Defendant's Counsel : ' I will take an exception.' By the District Attorney : ' This interruption is outrageous. Counsel should be instructed to take his exception when I have finished.' By Defendant's Counsel : 'Have I right to take it—' The Court : ' I do not think it is called for. That is all I can say. I can only say I do not think these continual interruptions are called for.' By Defendant's Counsel : 'I have a right to take an exception.' The Court : ' Yes ; you have.' By the District Attorney : 'But at a later time.' By Defendant's Counsel : ' I think not.' By the District Attorney : 'The purpose is to break the effect of anything I may say to you. He knows it is improper.' By Defendant's Attorney : 'I do not.' By the District Attorney : ' I say the people that you will find there in a line on that day are the victims of the defendant's crime. You will find there

the widow that has starved her brood of little children, and seen their faces get pinched and haggard, in order that she might be sure that tax day should not find her with empty hands. It is that woman's money, coined out of her blood and the blood of her children, that the defendant has stolen and squandered. If you will indulge the pitiful sentiments of your hearts, think of her. Oh! there are unwritten tragedies of that sort enacted, not in the luxurious habitations of Eighth avenue, but behind the shabby front doors of poor neighborhoods. Look at the old man standing in line, clutching in his knotted fingers his last year's receipt—' By the Defendant's Counsel: 'Does your honor permit this? Is this in your ruling?' The Court: 'I am going to permit him to sum up his case.' By Defendant's Counsel: 'I ask you to stop him at this point about the descriptions of the old man with the knotted fingers.' The Court: 'Proceed.' By Defendant's Counsel: 'I will take an exception.' By the District Attorney: 'You ought to be ashamed.' By Defendant's Counsel: 'You ought to be ashamed of yourself, to talk to a jury like this.' The Court: 'I think it is perfectly proper, but there is nothing I can do to compel the attorney of the defendant to take the ruling of the court' By Defendant's Counsel: 'Let him go on. I shall not interrupt him with another word. Let him describe all the knotted fingers in the land.' By the District Attorney: 'And the claque that stands behind the rail—' The Court: 'Proceed.' By the District Attorney: 'I say you will see old men in that line clutching in their knotted fingers rolls of dirty one-dollar bills. Look at their worn and shabby garments. Look at the marks of painful labor written all over their aged and clumsy limbs. It is the money of these people which the defendant has stolen and squandered. These are the people whose cause I plead. These are the victims of the defendant's crime. These are the people who now, by tens of thousands, are waiting outside for your verdict. Will you do them justice, or will you not? If you shall let this man, loaded with his guilty plunder, escape, then I say you have committed the unpardonable sin.'"

In charging the jury the court said: "Some things have

been said about the newspapers, about popular clamor, and about the burden of the taxpayers. Those are considerations which are not to control or influence you in deciding this case. What the clamor may be, I do not know; I have never heard of it. What the newspapers may have said, I do not care; I have never read it. How much the people may or may not be burdened, no matter. If the times were prosperous, a public official has no right to make an assault upon the public treasury, or to aid others in doing so, and he must be tried only for the crime he has committed, if he has committed one; and it would be wrong, in the extreme, to assume anything, and allow it to weigh against this defendant, because of hard times, or because of difficulties which the people who pay money into the city treasury may or may not have in acquiring the means of making the payment." Upon the request of the defendant he further charged " that there is no evidence in the case which would justify the jury in finding that it was more expensive to live upon Eighth avenue than in Prospect avenue," and "they are not to consider any facts but those which have been proven by the witnesses or the exhibits."

We do not wish to express any views which would restrict counsel in fair argument, comment, or appeal. We object, however, to the assertion by the learned district attorney of facts not proved, to his inflammatory appeals to passion and prejudice, and to his threat to the jury of popular denunciation, all under the sanction of the trial court. If the record in this case is sustained by the deliberate judgment of the court of last resort, it is difficult to see the limit to intemperate language, unproved assertion, or pernicious appeals on the part of counsel for the prosecution, except their own sense of propriety. The law, in our judgment, does not thus leave an accused person, presumed to be innocent until proved to be guilty, bound and helpless in the hands of his accuser. Even in a civil action, when counsel are permitted, under objection and exception, while summing up, to read to the jury an abstract from a pamphlet or newspaper, or to exhibit a cartoon, not in evidence, it is good ground for reversal. Koelges v. Insurance Co., 57 N. Y. 638; Williams v. Railroad Co., 126 N. Y. 96, 26 N. E. 1048; McKeever v.

Weyer, 11 Wkly. Dig. 258. So statements made by counsel, outside of the evidence, and subject to objection, which strongly tend to arouse sympathy, prejudice, or resentment in the minds of the jury, require a new trial, even if the court charges that they have nothing to do with the case, and must be disregarded. Halpern v. Railroad Co., 16 App. Div. 90, 45 N. Y. Supp. 134; Bagully v. Association, 38 App. Div. 59, 56 N. Y. Supp. 605. Language which might be permitted to counsel in summing up a civil action cannot with propriety be used by a public prosecutor, who is a quasi judicial officer, representing the people of the state, and presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action, to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and asks no conviction through the aid of passion, sympathy, or resentment. By such a course, in the long run, he throws away much of his strength, because his violent and reprehensible language betrays his bias, and finally weakens his influence with the jury. As was said by Judge Earl in People v. Greenwall, 115 N. Y. 520, 526, 22 N. E. 182, " The district attorney, representing the majesty of the people, and having no responsibility, except fairly to discharge his duty, should put himself under proper restraint, and should not, in his remarks, in the hearing of the jury, go beyond the evidence or the bounds of a reasonable moderation." Neither in that case nor in People v. Brooks, 131 N. Y. 321, 329, 30 N. Y. 189, was any objection made or exception taken. In the former, which was a capital case, the court was not bound to interfere, while in the latter, which was an appeal from the general term, it had no power to interfere, without an exception. As the admonition of the court has not proved sufficient to prevent improper and dangerous appeals to the prejudice of jurors, it has become necessary, as we think, to rigidly enforce the general rule of this and many other states that requires a reversal whenever the error is raised by a proper exception. Abuse of the defendant by the prosecuting officer in his address to the jury, which was calculated to arouse their passions

against him and materially prejudice him in the trial, has been held such error as would, of itself, cause a reversal. Stone v. State, 22 Tex. App. 185, 2 S. W. 585. Where the prosecuting attorney was permitted to comment on the personal appearance of the defendant, not as a witness, nor on account of his manner and bearing as such, but as indicating a probability of guilt, it was deemed sufficient to reverse a judgment of conviction. Bessette v. State, 101 Ind. 85. In Tucker v. Henniker, 41 N. H. 317, 323, the court said: "It would seem utterly vain and quite useless to caution jurors, in the progress of a trial, against listening to conversations out of the court room in regard to the merits of a cause, if they are to be permitted to listen in the jury box to statements of facts calculated to have a bearing upon their judgment, enforced and illustrated by all the eloquence and ability of learned, zealous, and interested counsel. * * * Statements of facts not proved, and comments thereon, are outside of a cause. They stand legally irrelevant to the matter in question, and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel." In Laubach v. State, 12 Tex. App. 583, the prosecuting attorney, when commenting upon the evidence in his closing argument, was interrupted by the defendant, in person, with the statement that, if he had certain absent witnesses, he could show a different state of facts. Thereupon the attorney, addressing the jury, stated that a brother of the absent witness told him that they, if present, would testify against the defendant. Objection was promptly made to this remark, and the district attorney at once told the jury not to regard anything he or defendant had said. The judgment was reversed upon the ground, among others, that the remark was unwarranted by the law or the facts, and was calculated to injure the rights of the defendant by prejudicing his case in the minds of the jury. In Brown v. Swineford, 44 Wis. 282, 292, counsel, in summing up, commented upon the appellant's connection with a railroad company, and his ability on that account to pay any judgment which might be rendered against him. The court reversed the judgment, and, after referring to the adjudged cases, remarked, "All of them support the rule now adopted by this court, that it is error,

sufficient to reverse a judgment, for counsel, against objection, to state facts pertinent to the issue, and not in evidence, or to assume arguendo such facts to be in the case when they are not." In State v. Smith, 75 N. C. 306, the prosecuting attorney, addressing the jury, said. "The defendant was such a scoundrel that he was compelled to move his trial from Jones county to a county where he was not known." The conviction was reversed, and the court said that "the purpose and natural effect of such language was to create a prejudice against the defendant, not arising out of any legal evidence before them; for the jury were precluded from inquiry into the causes of motives for moving the trial, and even from the knowledge whether the trial was moved by the state or the defendant." In Rea v. Harrington, 58 Vt. 181, 190, 2 Atl. 481, the court said, "It has been repeatedly held in other jurisdictions, and recently in this, that when counsel persistently travel out of the record, basing argument on facts not appearing, and appealing to prejudice, irrelevant to the case and outside of the proof, it not only merits the severe censure of the court, but is valid ground for exception." In Newton v. State, 21 Fla. 53, it was held that where counsel for the prosecution, upon the trial of a cause before a jury, abusing his privilege to the manifest prejudice of the defendant, makes statements with regard to evidence being adduced not pertinent, and therefore not within his privilege, it becomes the duty of the judge to stop him at once, and if he fails to do so, and the impropriety is great, it is ground for a new trial upon appeal. In Moore v. State, 21 Tex. App. 666, 2 S. W. 887, the district attorney, in his address to the jury, said that the defendant had been convicted of the offense for which he was on trial "upon a former and previous indictment," and upon appeal it was reversed on a trifling technicality in drawing the indictment, and he urged the jury to give him such a term in the penitentiary as would make up for the great expense he had caused upon a mere technicality. The court, in reversing the judgment, said: "In many decisions this court has urged upon counsel, whose duty it is to prosecute the pleas of the state, to refrain from injecting into trials of cases of this kind any matter calculated to inflame the minds or excite the prejudice of the

jury. If we could add anything to what has been said, or could use any language calculated to reach the minds and consciences of those to whom such admonitions are addressed, we would avail ourselves of the present occasion to do so. As we cannot, we can only reverse and remand the case, in the hope that the accused may secure a fair and impartial trial, according to law and according to those methods, alike ancient and honorable, which still obtain in all enlightened courts." See, also, as to the effect of a departure from legitimate course of argument, the following cases: Rudolph v. Landwerlen, 92 Ind. 34; School Town of Rochester v. Shaw, 100 Ind. 268; Hall v. Wolff, 61 Iowa, 559, 16 N. W. 710; Bremmer v. Railroad Co., 61 Wis. 114, 20 N. W. 687.

In a case that is free from doubt upon the merits, the appellate courts disregard errors of the trial court, even in a criminal case, when it is reasonably certain that they could not have affected the result. A proposition is reasonably certain when it is supported by the strong probabilities, but here the strong probabilities are that the errors did affect the result. The average man cannot read the eloquent but inflammatory language of the district attorney without being impressed by it, and it is safe to presume that the effect would be heightened by hearing those words spoken with animation and enthusiasm under the exciting circumstances surrounding an important criminal trial. The jury might be told by the court to forget them, but could they forget them? They might be told to disregard them, but how can we be certain that they did disregard them? Moreover, some of the most objectionable language was not alluded to by the court in its charge, and instructions to the jury do not always neutralize, either as a matter of law or fact, the effect of improper remarks in their presence. People v. Corey, 157 N. Y. 332, 346, 51 N. E 1024; Brooks v. Railway Co. 156 N. Y. 244, 252, 50 N. E. 945; People v. Hill, 37 App. Div. 327, 56 N. Y. Supp. 282; Swan v. Keough, 35 App. Div. 80, 54 N. Y. Supp. 474. From our observation of jurymen, we think the language under consideration would be apt to turn their minds against the defendant, divert their attention from the evidence, and prevent the exercise of sound and dispassionate judgment upon the merits.

It brought before them vivid pictures of suffering and want, of wrongs done to the widow and orphan by the defendant, and of a multitude of people waiting outside the court house for his conviction. The hardships of small taxpayers, the privations of the poor, and the overwhelming influence of public opinion, were urged against him, and he was described as a thief living in a palace on the proceeds of public plunder. There was even an attempt to intimidate the jury by telling them that they would commit " the unpardonable sin " unless they convicted him. The cause of complaint by the appellant is not a single, inadvertent remark, which might well be overlooked, but, after repeated objections, improper statements were persisted in under the claim, sustained by the court, that it was right to make them. The harsh and unjust statements of the district attorney were not founded upon evidence, but rested wholly on his unsupported declarations. The most of them would have been ruled out as immaterial or incompetent, if evidence had been offered to show that they were true. They violated the reason upon which the law of evidence is founded by spreading facts before the jury without any proof, and virtually, also, the rule of evidence which prohibits immaterial and incompetent facts from being proved. There was no evidence that it cost $10,000 a year to live in the style of Eighth avenue, where the defendant resided, and when the point was raised the court so ruled. The district attorney, however, in disregard of the ruling, appealed to the common sense of the jury, and the court very properly tried to check him, but he was allowed to appeal to their experience without rebuke. After that he met with no attempt at restraint by the court. Whatever he said, whether it was about the widow starving her little children until their faces got pinched and haggard in order that she might pay the taxes stolen by the defendant, or about aged men, deformed by painful labor, whose money the defendant had squandered, met with the approval of the court. Instead of repressing these unfounded and dangerous assertions, when repeatedly requested to, at first he condemned the efforts of the defendant's counsel to prevent them, and finally pronounced the course of the district attorney " perfectly proper," and expressed regret that his ruling

to that effect was not acquiesced in. Even the threat of pop-
ular denunciation, and the attempt to frighten the jury by de-
claring that they would commit the unpardonable sin if they
found for the defendant, met with neither remonstrance nor re-
proof. The language of the prosecuting officer, thus indorsed
by the highest authority known to the jury, must have gone
home to their minds with powerful and convincing effect, while
the counsel for the defendant was left in the attitude of a wrong-
doer trying to disturb the proceedings of the court. After per-
sisting in his efforts to protect his client until the court held he
was out of order, he was not obliged to run the risk of punish-
ment for contempt by continuing to object, for all that was said
by the district attorney after the court had taken this position
should be held subject to the exceptions already interposed.
The court should even allow an exception upon appeal, where
counsel were prevented from excepting at the trial. Moreover,
the objections taken were to the general course pursued by the
district attorney, and, when the court had sanctioned this, no
further objection or exception was necessary. This method of
summing up should have been sternly interrupted by the court
of its own motion, so as to exclude improper statements and
comments from the consideration of the jury, for objections
made after the district attorney had said what he wanted to
were objections made after the harm was done.

After what took place during the summing up, how can we
be sure that the general and placid language of the charge
wholly counteracted the pointed and vigorous words of the dis-
trict attorney, indorsed as they had been by the court itself?
When improper evidence has been received or improper state-
ments made in the presence of the jury, if the court seeks to
correct them the correction should be as broad as the error, and
cover substantially the same ground, as was the case in Cole v.
Coal Co., 159 N. Y. 59, decided at the present term. The
court in its charge said nothing about the improper appeals
to sympathy, prejudice, or passion, the starvation of chil-
dren by their widowed mothers, the knotted fingers and
bent forms of old men, the denunciation of the defendant as a
thief, or the bugbear of the unpardonable sin, held up before

the jury so forcibly. The correction did not cure the errors, because it did not go far enough, and was not sufficiently clear and specific. It did not repel the presumption of injury. Coleman v. People, 58 N. Y. 555, 561 ; People v. Gonzalez, 35 N. Y. 49, 59. Whether the defendant be innocent or guilty, in our opinion he has not been adjudged guilty in accordance with law, because he has not had the fair and impartial trial which the law prescribes for a person charged with crime. If we disregard a sound and well-established rule in his case because we think he is guilty, we tear down one of the safeguards provided by society for the protection of its citizens, and the precedent may at some time aid in depriving an innocent man of his liberty or his life. The judgment should be reversed, and a new trial ordered.

HAIGHT, J. (dissenting).—The indictment, under which the defendant was convicted was founded upon section 165 of the Penal Code. The affirmance by the appellate division was unanimous, thus disposing of the questions of fact. We have carefully examined the exceptions taken with reference to the admission and rejection of evidence, and are of the opinion that they were properly disposed of by the court below. There is only one question which we think it our duty to discuss upon this appeal, and that pertains to the remarks of the district attorney who tried the case, which have been quoted in the prevailing opinion.

The privilege of counsel in addressing a jury has often given rise to controversies which have been the subject of consideration in our courts, as well as in the courts of our sister states. In Martin v. State, 56 Am. Rep. 814, and McConnell v. State (Tex. App.), 58 Am. Rep. 648; s. c., 3 S. W. 699, will be found notes in which many of the cases are collected and digested. There is one case to which we will specifically refer, for it expresses the views of this court upon the subject, and that is the case of Williams v. Railroad Co., 126 N. Y. 96, 102, 26 N. E. 1049. In that case, Andrews, J., in delivering the opinion of the court, says: "It is the privilege of counsel, in addressing a jury, to comment upon every pertinent matter of

fact bearing upon the questions which the jury have to decide. This privilege it is most important to preserve, and it ought not to be narrowed by any close construction, but should be inter-preted to the largest sense. The right of counsel to address the jury upon the facts is of public as well as private consequence, for its exercise has always proved one of the most effective aids in the ascertainment of truth by juries in courts of justice, and this concerns the very highest interest of the state. The jury system would fail much more frequently than it now does, if freedom of advocacy should be unduly hampered, and counsel should be prevented from exercising within the four corners of the evidence the widest latitude, by way of comment, denunciation, or appeal, in advocating his cause. This privilege is not be-yond regulation by the court. It is subject to be controlled by the trial judge in the exercise of a sound discretion, to prevent undue prolixity, waste of time, or unseemly criticism. The privilege of counsel, however, does not justify the introduction, in his summing up, of matters wholly immaterial and irrelevant to the matter to be decided, and which the jury have no right to consider in arriving at their verdict. The jury are sworn to render their verdict upon the evidence. The law sedulously guards against the introduction of irrelevant or incompetent evi-dence by which the rights of a party may be prejudiced. The purpose of these salutary rules might be defeated if jurors were allowed to consider facts not in evidence, and the privilege of counsel can never operate as a license to state to a jury facts not in evidence, or to present considerations which have no legitimate bearing upon the case, and which the jury would have no right to consider. Where counsel, in summing up, proceeds to dilate upon facts not in evidence, or to press upon the jury considerations which the jury would have no right to regard, it is, we conceive, the plain duty of the court, upon ob-jection made, to interpose; and a refusal of the court to inter-pose, where otherwise the right of the party would be preju-diced, would be legal error." The district attorney is a high public officer, representing the state, which seeks equal and im-partial justice, and it is as much his duty to see that no inno-cent man suffers as to see that no guilty man escapes. In the

discharge of these most important duties, he commands the respect of the people of the county, and usually exercises a great influence úpon jurors. In discussing the evidence, he is, as we have seen in the case alluded to, given the widest latitude, within the four corners of the evidence, by way of comment, denunciation, or appeal, but he has no right to call to the attention of the jury matters or considerations which the jurors have no right to consider. Verdicts obtained through duress, bias, or prejudice are illegal, and will be set aside. This is also true with reference to verdicts based upon popular clamor. Upon referring to the comments of the district attorney, it appears that he proceeded to draw pictures, based upon matters outside of the evidence, of a widow with her starved brood of little children, with faces pinched and haggard, and an old man clutching in his knotted fingers rolls of dirty one-dollar bills, standing in line of taxpayers all day in order to save the little rebate which early payment of their taxes secures. He then says, "These are the people whose cause I plead," and then states that "these are the people, who now, by tens of thousands, are waiting outside for your verdict. Will you do them justice, or will you not? If you shall let this man, loaded with his guilty plunder, escape, then I say you have committed the unpardonable sin." As we understand this language, the district attorney demands of the jury a verdict of "Guilty," based upon the clamor of tens of thousands who are waiting outside, and insists that, if the jurors do not comply with his demand, they will commit the unpardonable sin. This, we think, was going too far, and cannot be approved. He departed from his line of duty, which was a discussion of the evidence, and a demand of a conviction based thereon, and appealed to the jury for a conviction upon considerations which had no legitimate bearing upon the case, and which the jury had no right to consider.

We, however, are inclined to the view that a new trial is not required. Under the constitution, we are limited in our review to questions of law. The defendant's counsel took a number of exceptions to the statements made by the district attorney, but when he came to his last and final statement, in which the real vice occurred, the defendant's counsel neglected to take an

exception. That which preceded the final remarks of the district attorney may not have been in good taste, but we do not. regard it, standing alone, to be such a departure from the line of discussion permissible within the privilege of the district attorney as to warrant a reversal. We regard the question very much relieved by the charge of the court, who, after listening to the comments of the district attorney, says: "Some things have been said about the newspapers, about popular clamor, and the burden of taxpayers. Those are considerations which are not to control or influence you in deciding this case. What the clamor may be, I do not know; I have never heard of it. What the newspapers may have said, I do not care; I have never read it. How much the people may or may not be burdened, no matter. If the times were prosperous, a public official has no right to make an assault upon the public treasury, or to aid others in doing it, and he must be tried only for the crime he has committed, if he has committed one; and it would be wrong, in the extreme, to assume anything, and allow it to weigh against the defendant, because of hard times, or because of difficulties which the people who pay money into the city treasury may or may not have in acquiring the means of making the payment." The court further charged: "There is no evidence in the case which would justify the jury in finding that it was more expensive to live upon Eighth avenue than in Prospect avenue; that no unfavorable inference can be drawn in this case against the defendant from the fact that in the month of September, 1897, he moved from Prospect avenue into Eighth avenue." Under section 542 of the Code of Criminal Procedure, we are requested to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. Under the circumstances, therefore, we think the judgment and conviction should be affirmed.

PARKER, C. J., and BARTLETT and MARTIN, JJ., concur with VANN, J., for reversal of judgment of conviction. GRAY and O'BRIEN, JJ., concur with HAIGHT, J., for affirmance.

Judgment of conviction reversed, and new trial ordered.