### PEOPLE v. MILKS.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1900.)

1. CRIMINAL LAW—REMARKS OF DISTRICT ATTORNEY—PREJUDICIAL ERROR.

On a prosecution for arson, the district attorney's opening remarks, over objection, that he expected to prove that within the past six years accused had had at least six fires, destroying his property, which was insured, and obtained the insurance money each time, is prejudicial, and reversible error, though the prosecution on the trial offered such incompetent proof, and the jury were not instructed that such remarks were not to be regarded by them.

2. SAME—IMPEACHING WITNESS.

A district attorney's opening remarks to the jury that he expected to call a witness, who had given testimony on the trial in favor of one who was jointly indicted with accused, which was different from that which he would give on this trial, and that the witness had committed perjury on the former trial, had been convicted of the offense, and had subsequently confessed that such testimony was false, is prejudicial error; for he could not have impeached such witness by introducing such evidence on the trial.

3. SAME—REVERSIBLE ERROR.

In a criminal case, the district attorney, in summing up the case, after commenting on accused counsel's reputation for fixing witnesses and jurors, and stating that the proof had justified his estimate of his character in criminal cases, proceeded, by illustration,—supposing a case in which accused's counsel was the actor,—to show how jurors could be approached. There was no proof of accused's counsel's misconduct in attempting to fix jurors or witnesses, and such attorney disclaimed any intimation that his illustration was supported by the evidence in the case. After his attention was called to his language, he stated that he had thought of it, and had no fears as to the result, as far as the records were concerned, and proceeded, indulging in unrestrained denunciation of accused's counsel for matters not connected with the case, and, in effect, directed the jury's attention to the fact that accused was not sworn in his own behalf. *Held*, that such remarks were prejudicial to accused, and cause for reversal.

Appeal from trial term, Cattaraugus county.

Gilbert Milks was convicted of arson in the third degree, and from the judgment, and an order denying his motion for a new trial, he appeals. Reversed.

On the 16th day of February, 1899, the grand jury of Cattaraugus county indicted the defendant, jointly with one Mitchell Smith, for the crime of arson in the third degree, for having on the 4th day of June, 1898, willfully, unlawfully, and feloniously, and with intent to destroy the same, set on fire and burned a certain dwelling house in the town of New Albion, in said county, the property of the defendant. The defendant was arraigned upon such indictment at a trial term of the supreme court held in and for said county on the 16th day of February, 1899, and pleaded not guilty. On the following day the indictment was sent, by order of the supreme court, to the county court for trial. The defendant demanded a separate trial, which was had, commencing on the 16th day of October, 1899; Mitchell Smith having been previously tried and convicted. It is the contention of the people that this defendant, Gilbert Milks, being the owner of the buildings and property burned, procured said Mitchell Smith to set said property on fire and cause its destruction while he (the defendant) was away from home, and at a place 16 miles distant, in order that he might obtain the insurance thereon. The jury found the defendant guilty as charged in the indictment, and he was sentenced to the state's prison at Auburn for the period of three years and nine months. The presiding judge granted a certificate of reasonable doubt, a stay was granted, and the defendant was admitted to bail.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

M. B. Jewell, for appellant.
J. M. Congdon, Dist. Atty., for the People.

McLENNAN, J. A careful reading of the evidence bearing upon the question of defendant's guilt leads us to the conclusion that it was such as to require the submission of that question to the jury. It will therefore be unnecessary to review the evidence, except so far as it may be material to the discussion of the questions raised by the objections and exceptions taken by the defendant during the progress of the trial.

The first objection and exception to which attention is called relate to a statement made by the learned district attorney in opening the case to the jury. The district attorney said:

"We expect to prove that within the last six or eight years this defendant has had at least six fires, destroying his property, which was insured, and where he obtained the insurance money every time, up to this time. I shall offer that proof. (The defendant's counsel objected to his going further with this statement about former fires that Milks had had, and to his stating further upon that subject, and to the statement which has already been made upon the subject of former fires, and receiving the insurance upon them, upon the ground that it is improper in this case. The defendant objected to his stating anything upon the subject of former fires not connected with this transaction.) By the Court: You may proceed. (The defendant's counsel duly excepted.) By the District Attorney: I shall offer to prove here in this case every fact which I have just stated, claiming that that will have a bearing upon this question on trial before you. I shall not offer that proof with a view of trying another fire, but only offer it as bearing upon the intent, and the probability of the defendant's being connected with this fire. I believe that proof is competent, and when the time comes I shall make my argument as to that legal proposition, but not now. I expect to show the motive in carrying this heavy insurance."

The statement, standing alone, having been objected to, and an exception taken by the defendant, clearly constituted reversible error, within the decision in People v. Smith, 162 N. Y. 520, 56 N. E.

1001.   Upon the trial of that case, which was upon an indictment for arson, in opening the case to the jury the district attorney said:

"We shall show you, if permitted, that before this fire which occurred at the Boulevard, in which some seven buildings owned by the mother and family of this defendant were burned, many other buildings which this defendant had assisted in erecting, or in which he was interested, were destroyed in a similar manner.   Within less than a year before the fire on the Boulevard—"

At this point, and before the statement was completed, the defendant's counsel objected that it was improper.   The objection was overruled by the court, to which ruling an exception was taken, whereupon the prosecuting attorney remarked:

"If counsel insists upon it, I will not go into the matter at this time."

The court of appeals held that the statement was improper; that it might have been prejudicial to the defendant, and have caused the jury to "infer that they were dealing with an old offender,"—and for such error the judgment of conviction was reversed.

In the case at bar it is insisted by the learned district attorney that the error was cured, because later in the case he offered to prove the facts stated in his opening.   Upon the direct examination of one Arthur G. Reynolds, called as a witness by the people, who was an insurance agent, and had insured the buildings in question, the witness was asked by the district attorney:

"Q. During the last six years have you effected insurance upon other property of Gilbert Milks, aside from this occasion,—this mentioned in the policy? A. Yes, sir.   Q. And during the last six years have there been five fires, before this, of property that was insured by you in fire insurance companies, and in each of these cases did the property burn, and was the insurance money in each of the cases paid to Gilbert Milks?   (Objected to upon the ground that it is immaterial and incompetent.   Tends to prove circumstances not in any way connected with the charge contained in the indictment, and upon trial here.)   By the District Attorney:   I propose to prove that the defendant, Gilbert Milks, has had other property insured during the last six years, and that five different pieces of property have been insured by him in fire insurance companies, and the buildings and property so insured have burned in each and every case under suspicious circumstances, and that the insurance in each and every case prior to the one of June 4, 1898, has been paid to the defendant by the insurance companies.   By the Court:   My present impression is that the proof is incompetent for the purpose of bearing upon any question in this case.   The only purpose it seems to me it could be would be upon the question of intent.   It hardly seems that where a similar act was done so remote from the time when this offense was committed, if one was committed, would have any bearing upon this case,—such a bearing as the jury might consider in determining the offense, if this act was committed.   Unless I get more light, I shall exclude it.   The matter of time is the question here.   I think the question is fairly up, and, if you can supply proof to connect these fires, possibly that might make a difference; but, the way the offer is stated now, I do not think this is proper."

We fail to see how the fact that the incompetent proof referred to in the opening was subsequently offered by the people could cure the error, or in any way militate against the force of the improper statement.   In the case of People v. Smith, supra, the district attorney did not offer to prove the facts stated by him in his opening address.   In speaking of that feature of the case the court said:

"If the district attorney had the right to make the proof he proposed, he did not make it, and thus may have prejudiced the defendant by a charge he

could not or did not intend to support. If the district attorney had no right to make the proof, then the charge, although no more harmful to the defendant, was a more reprehensible invasion of his rights."

After pointing out that it would have been error to have received proof of the facts contained in the statement made in that case, the court said:

"It is difficult to lay down an inflexible rule applicable to irrelevant statements by the public prosecutor to the prejudice of the defendant. In some cases it is manifest they do no harm. In others, where the case depends upon a mass of circumstances, many of which are contradicted, others equivocal, except as light is reflected upon them by their association, it is more important that nothing but proven and relevant facts should be brought into the whole field of observation from which the jury are to deduce their conclusion. And as the field enlarges it is the more important that care should be taken to prevent the mingling of mere statement with fact. Enough has already been said to show that the case before us is of the latter kind. If the court had sustained the objection of the defendant, the jury would have been instructed as to the range of the inquiry. As the court overruled it, they understood the district attorney to be speaking within proper limits, and they might have inferred that they were dealing with an old offender."

The remarks are especially applicable to the case at bar. This case depends upon a mass of circumstances, many of which are contradicted, and others equivocal, except as light is reflected upon them by their association. From the statement of the district attorney, from the question propounded to the witness, which contained a restatement of the facts, even more pointedly put, and from the remarks of the learned court, it is highly probable that the jury were led to believe that the defendant had committed the crime of arson upon at least five occasions within six years prior to the time of the trial. The jury were not instructed by the court that the statement made by the district attorney, the offer to prove which was but a reiteration of such statement, should not be regarded by them or influence their verdict, or that they should not consider that the facts stated by the district attorney existed, except that at the close of its charge, in answer to the request of defendant's counsel: "I ask the court, in view of what counsel stated when he was summing up upon the question of former fires, to instruct this jury that they have nothing whatever to do with former fires; that they are to consider this case solely upon the testimony which has been given here in this case,"—the court said: "Yes; I so charge." In his remarks in excluding the evidence the trial judge apparently assumed that the facts did exist as stated by the district attorney, and as he offered to prove them. The language of the court is: "It hardly seems that where a similar act was done so remote from the time when this offense was committed, * * * and, if you can supply proof to connect these fires, possibly that might make a difference,"—assuming that the "act" had occurred, and that "these fires" had taken place. At least, the language of the court was such as would naturally lead a jury to infer that the facts as stated in fact existed; and, if so, they would influence their deliberations unfavorably to the defendant. Assuming that the decision of the court of appeals in People v. Smith is authoritative upon the question that the statement made by the district attorney in his open-

ing in that case constituted reversible error, it would be absurd to hold that such error could be cured by again, during the progress of the trial, specifically calling the attention of the jury to it, and giving it emphasis by calling a witness or witnesses to prove such alleged incompetent facts, which were all embraced in the questions propounded. It does not follow that it is prejudicial error for a prosecuting officer to offer incompetent evidence which is rejected by the court, but we think the rule, which we consider a wholesome one, as applied to the trial of criminal cases, may be regarded as settled, to wit, that if a prosecuting officer, in opening a case to the jury, makes a statement of facts which are irrelevant, incompetent, and inadmissible, and clearly prejudicial to the defendant, and which are duly objected to, and an exception taken, it will constitute reversible error, unless the court by appropriate language instructs the jury that such statement of facts should be disregarded by them, and that such alleged facts ought not to be permitted to influence their verdict, and unless it clearly appears that such improper statement did not injuriously affect the defendant's rights, and that an offer to prove such facts, subsequently made during the progress of the trial, will not cure such error.

In his opening address to the jury the district attorney made certain statements in respect to one Whalen, who had been called as a witness upon the trial of the indictment against Mitchell Smith by the defendant in that case, and whom the district attorney said he proposed to call as a witness in this case. Among other things, the following took place:

"By the District Attorney: It was believed by the people that this evidence which Whalen gave was perjured evidence. If it had not been, it would have been my duty to have gotten up and moved to discharge Mitchell Smith. He either was not there, and if he was he did not set this fire. By Mr. Jewell: I object to it as improper. By the Court: I do not think it is proper to state what the duty of the district attorney would have been. Do you intend to connect the defendant with having had anything to do with procuring this testimony to be given, which you claim was false? By the District Attorney: I do. By the Court: You may proceed. (The defendant's counsel duly excepted, and the district attorney proceeded:) The grand jury in September last indicted Whalen for perjury on these statements. Last week he was tried here in this court room, and was convicted. By Mr. Jewell: I object to this statement being made to the jury, upon the ground that it is improper, and ask to have it stricken from the record. By the District Attorney: I withdraw the statement that he was convicted. By the Court: The details are not of any importance, I think. You may be permitted to show that the defendant procured a witness to testify falsely upon the subject-matter involved in the trial of this action."

The district attorney then said to the jury:

"Whalen was not put upon the stand in his own behalf, and was not sworn. Since the trial of Whalen, he has made a complete confession. By Mr. Jewell: I object to the statement. By the District Attorney: I will withdraw that."

The district attorney then proceeded:

"Since that trial facts have come to my mind which rendered it my duty to place John Whalen upon the stand as a witness in this case, and I am going to do it. By Mr. Jewell: I object to the statement,—to the whole of it; as to what has taken place in the Smith trial, or as to what has taken place in the evidence of this man. And I want an exception."

In effect, the district attorney stated that one of the witnesses whom he was going to call had given testimony upon the trial of Mitchell Smith, who was jointly indicted with this defendant, which was different from what he was going to give on this trial; that the evidence given upon the former trial was untrue; that the witness, in giving it, had committed perjury; that he had since been indicted and convicted of such offense; and that after such conviction he had confessed that the testimony so given by him was false. It would have been clearly incompetent for the district attorney to have proven those facts. He would not have been allowed in that manner to impeach his own witness, or to show what conclusion some other jury had reached as to the truthfulness of his testimony, or what the witness had said in regard to such former testimony. The statements were improper, were clearly prejudicial to the defendant, and their harmful effect was in no manner corrected or mollified by the learned trial court. The withdrawal of some of the statements by the district attorney when objected to by defendant's counsel did not cure the error. It cannot be possible that a prosecuting officer, whose statements have additional weight with a jury by reason of his official position, may properly state in his opening, in substance:

"I propose to call a witness who will give evidence tending to prove the guilt of the accused. Upon another trial, involving the same facts, he made a contrary statement, but it was not believed by the jury. He subsequently was indicted for perjury, for having made such statement under oath, and a jury found him guilty, and afterwards he himself admitted that the statement so testified to by him was false."

When John Whalen was called as a witness by the district attorney, he could properly only have been interrogated as to facts within his knowledge legitimately bearing upon the question of defendant's guilt. Except upon the defendant's examination, it could not have been shown that he had been convicted of perjury by a jury for having given different testimony upon another trial, and that afterwards he admitted that the testimony so given by him was false. Yet in this case those facts were permitted to come to the knowledge of the jury at the very outset of the trial, and their verity was vouched for by a person clothed with the responsibility of official position. We think the statements to which attention has been called constituted error, and that it cannot be said that such error was not prejudicial to the defendant. Many of the statements made by the learned district attorney in his closing address to the jury were such as would naturally tend to arouse the passions and excite the prejudice of the jury against the defendant, and lead their minds from a calm and dispassionate consideration of the question as to whether or not, upon the evidence, the defendant was guilty of the crime charged in the indictment. The district attorney, in criticising defendant's counsel, among other things, said:

"I said that the evidence as developed in this case shows and will justify the reputation which he has got of fixing witnesses, and that I had heard that within the last two or three years he had tried to shake off the reputation which he had of fixing witnesses, and sometimes jurors."

Upon that statement being objected to, the court said:

"I think that had better be omitted about the reputation of counsel, because he is not a witness; and while I think you are at liberty to comment upon his connection with whatever may have been done here, or what you claim to have been done in reference to the transaction alluded to by you as having taken place between Gardner and Whalen, and I think you are not permitted to go outside of that."

The district attorney then said:

"I will withdraw all remarks I made about anything outside of that."

And he then continued:

"The proof, as developed, has justified my estimate of his character in criminal cases."

The defendant's counsel having again objected, the court said:

"The question of the estimate of the district attorney is not proper."

There is no proof in the case bearing upon the reputation of defendant's counsel with regard to fixing witnesses or jurors within the last two or three years, or at any other time. There was no proof as to the estimate of the character of defendant's counsel by the district attorney, and could not have been. The district attorney then proceeded:

"By way of illustration, I want to ask you if on Friday last, when the special panel of jurors was drawn to serve upon this Milks case, and I had got the list at the clerk's desk and put it in my pocket, and I found that there was a hotel keeper from the town of Dayton, five miles from my home, drawn on the jury to serve upon this case, and the next morning I had taken my family and gone up to this hotel, and spent the day with him, and hobnobbed with him, and spent my money there, and then come down here the next day and got him on this jury; would you not·say to me that I ought to be driven out of the county of Cattaraugus? And by way of illustration, again, I want to ask you, supposing that this man Jewell, after the special panel of jurors had been drawn last Friday, got a copy of the list, and found that there was a hotel keeper drawn to serve upon the case living in the town of Allegany, adjoining his home, and, having found that out, he should take his family on the next day and go to the hotel keeper's home, and spend the day with him and hobnob with him, and spend his money there, and quite likely get him to violate the excise law, and then come down here the next day and get him on this jury."

The defendant's counsel objected to the statement to the jury—

"As incompetent and improper to be stated before this jury. There is no evidence in the case that Mr. Jewell did anything of the kind, and I want an exception. By the District Attorney: I want further to state that the district attorney disclaims any intimation or statement that there is any such evidence in the case; that I have not so intimated; that I expressly used these forms of speech by way of illustration of how a juryman might be approached."

We think the statement of the district attorney that in what he said he did not intend or intimate that it applied to the defendant's attorney or to the case at bar, but was merely an illustration, did not cure the evil, and the jury had the right to infer that it had reference to something that occurred when the jury in this case was called, and subsequently, and before the commencement of the trial, and that a charge of improper conduct was being made against defendant's counsel. After such statement by the district attorney the court said:

"The remarks are on record, and I suppose whatever error, if any, has been committed, will appear on the record. I desire, however, to caution the dis-

trict attorney that the courts have gone in the direction of limiting the remarks of counsel. prosecuting officers in criminal cases, and that he, being familiar with the rule, will refrain from commenting upon anything except what is before the jury in the way of evidence."

After the attention of the district attorney was thus called to the extravagant language used by him, he continued:

"I am doing it with my eyes wide open. I have thought of this. I have weighed my words carefully, and I have no fears of the result, as far as the records are concerned; and if I am wrong I will stand it. I say it to the jury for the purpose of showing them how important it is that jurors should be above suspicion, and I have used these matters by way of illustration, showing how a juror may be approached."

Again the district attorney said:

"They pawned off their bogus alibi, they made their proof before the jury, and the next grand jury indicted Mr. Whalen for perjury. What do you find? You find M. B. Jewell and Daniel Powell defending him. Who do you find defending Mitchell Smith? M. B. Jewell and Mr. Powell. They are poor men, both of them, without a dollar on earth. Who pays the expenses of defending these men? Gilbert Milks, of course."

The statement of the district attorney was objected to by defendant's counsel, and he then proceeded:

"The counsel who defended Gilbert Milks also defended Mitchell Smith and John Whalen. There is no evidence of anybody paying them anything, and, if it would comfort his poor soul, I am willing to have it go on record that probably Mr. Jewell is working for his health, and that he doesn't expect to get any money whatever."

That statement was also objected to. There was not a word of evidence tending to show that the defendant Milks paid Mr. Jewell for defending either Smith or Whalen.

The district attorney then comments at length upon the fact that John Whalen, who was indicted for perjury, did not go upon the stand as a witness in his own behalf upon the trial of that indictment, and he said:

"The reason why John Whalen did not go upon the stand as a witness when he was being tried was because he knew he was guilty, and he knew if he went onto the stand it would injure him, and so he kept off. Now, after that, and after the efforts which had been more or less well made by the counsel to clear him, it comes down to the question of Gilbert Milks. What would you expect,—that he was guilty? He never had told this story to anybody until March. It was an absolutely made-up story. It had been tried once in the Mitchell Smith case. It had been tried the second time in his own case, although he didn't go on and tell it, and it failed in his case. Then I ask, what in Heaven's name have you got a right to say? Haven't you got a right to say that that is an established fact? Haven't you got a right to say that John Whalen did commit perjury, and that he did lie, when he said he saw that man there at midnight?"

The record contains only a small part of the summing up of the prosecuting attorney, and no part of the summing up of the counsel for the defendant. The portions of the district attorney's closing address to the jury which do appear are inflammatory in the extreme; are such as appeal to the passions and prejudices of the jury, rather than to their calm and deliberate judgment, and go far beyond the bounds of reasonable moderation. Facts and circumstances not based upon evidence, without any proof of their existence, are dwelt

upon. Vituperation is indulged in, unrestrained denunciation of defendant's counsel for matters in no way connected with the case upon trial is resorted to, and, in effect at least, the attention of the jury is called to the fact that the defendant was not sworn as a witness in his own behalf, all of which we think constituted error which was prejudicial to the defendant, and makes a reversal of the judgment and order appealed from necessary. It is unnecessary to cite or review the numerous authorities upon the subject. The case of People v. Fielding, 158 N. Y. 542, 53 N. E. 497, 46 L. R. A. 641, recently decided by the court of appeals, is decisive of the question; and a long line of cases decided by the highest courts of this and other states is referred to in the opinion of the court, which fully sustains the conclusion reached. In that case the defendant was being tried upon an indictment charging him with the crime of consenting to and conniving at the auditing or allowance of a fraudulent bill or claim against the city of Brooklyn, in violation of section 165 of the Penal Code; he being at the time a deputy commissioner of the city works of that city. The district attorney, in his summing up in that case, among other things, said:

"Defendant has changed his style of living from a frame house on Prospect avenue to a palatial residence on Eighth avenue, which every man knows cannot be maintained in the style of that neighborhood for less than ten thousand dollars a year."

He further, in glowing and forcible language, assumed to portray the effect of defendant's crime, by picturing the tax collector's office as surrounded by poor people, and among them—

"The widow, that has starved her brood of little children and seen their faces get thin and haggard, in order that she might be sure that tax day should not find her with empty hands. It is that woman's money, coined out of her blood and the blood of her children, that the defendant has stolen and squandered. If you will indulge the pitiful sentiments of your hearts, think of her. Oh, there are unwritten tragedies of that sort enacted, not in the luxurious habitations of Eighth avenue, but behind the shabby front doors of poor neighborhoods. Look at the old man, standing in line, clutching in his knotted fingers his last year's receipt. I say you will see the old men in that line clutching in their knotted fingers rolls of dirty one-dollar bills. Look at their worn and shabby garments. Look at the marks of painful labor written all over their aged and clumsy limbs. It is the money of these people which the defendant has stolen and squandered. These are the people whose cause I plead. These are the victims of the defendant's crime. These are the people who now, by tens of thousands, are waiting outside for your verdict. Will you do them justice, or will you not? If you shall let this man, loaded with his guilty plunder, escape, then I say you have committed the unpardonable sin."

There was no proof that any of the facts referred to by the district attorney in that case existed or had any basis whatever; certainly, none upon the evidence. Each statement was objected to, over and over again, by the defendant's counsel. All were overruled, and the district attorney was allowed to proceed by the trial court. In that case, when the presiding justice came to charge the jury, he said:

"Some things have been said about the newspapers, about popular clamor, and about the burden of the taxpayers. Those are considerations which are not to control or influence you in deciding this case."

He further charged, upon the request of defendant's counsel—

"That there is no evidence in the case which would justify the jury in finding that it was more expensive to live upon Eighth avenue than in Prospect avenue, and they are not to consider any facts but those which have been proven by the witnesses or the exhibits."

After a careful review of the authorities, the court of appeals held in that case that the course pursued by the district attorney in his summing up constituted reversible error, and upon that ground alone the judgment of conviction was reversed. The court said (page 546, 158 N. Y., page 498, 53 N. E., and page 647, 46 L. R. A.):

"We do not wish to express any views which would restrict counsel in fair argument, comment, or appeal. We object, however, to the assertion by the learned district attorney of facts not proved, to his inflammatory appeals to passion and prejudice, and to his threat to the jury of popular denunciation, all under the sanction of the trial court. If the record in this case is sustained by the deliberate judgment of the court of last resort, it is difficult to see the limit to intemperate language, unproved assertion, or pernicious appeals on the part of counsel for the prosecution, except their own sense of propriety. The law, in our judgment, does not thus leave an accused person, presumed to be innocent until proved to be guilty, bound and helpless in the hands of his accuser."

Again the court said:

"Language which might be permitted to counsel in summing up a civil action cannot with propriety be used by a public prosecutor, who is a quasi judicial officer, representing the people of the state, and presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action, to become a heated partisan, and, by vituperation of the prisoner and appeals to prejudice, seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and asks no conviction through the aid of passion, sympathy, or resentment."

Again the court said:

"From our observation of jurymen, we think the language under consideration would be apt to turn their minds against the defendant, divert their attention from the evidence, and prevent the exercise of sound and dispassionate judgment upon the merits. It brought before them vivid pictures of sufferings and want, of wrongs done to the widow and orphan by the defendant, and of a multitude of people waiting outside the court house for his conviction. The hardships of small taxpayers, the privations of the poor, and the overwhelming influence of public opinion were urged against him, and he was described as a thief living in a palace on the proceeds of public plunder. There was even an attempt to intimidate the jury by telling them that they would commit 'the unpardonable sin' unless they convicted him. The cause of complaint by the appellant is not a single, inadvertent remark, which might well be overlooked, but, after repeated objections, improper statements were persisted in, under the claim, sustained by the court, that it was right to make them. The harsh and unjust statements of the district attorney were not founded upon evidence, but rested wholly on his unsupported declarations. The most of them would have been ruled out as immaterial and incompetent if evidence had been offered to show that they were true. They violated the reason upon which the law of evidence is founded, by spreading facts before the jury without any proof, and virtually, also, the rule of evidence which prohibits immaterial and incompetent facts from being proved."

Again, at page 553, 158 N. Y., page 500, 53 N. E., and page 655, 46 L. R. A., the court said:

"After what took place at the summing up, how can we be sure that the general and placid language of the charge wholly counteracted the pointed and

vigorous words of the district attorney, 'indorsed as they had been by the court itself?"

We have quoted thus at length from the opinion of the court because we think the language is especially applicable to the opening and summing up of the district attorney in the case at bar, and that the decision in that case is an authoritative declaration that what appears in this case constituted reversible error. It follows that the judgment and order appealed from should be reversed, and a new trial ordered.

Judgment and conviction reversed, and proceedings remitted to the county court of Cattaraugus county, pursuant to section 547 of the Code of Criminal Procedure. All concur; ADAMS, P. J., in result only.