any liability the amount of which was not absolutely fixed by a draft drawn by the agent of the company. He is in no wise responsible for the failure of the plaintiffs to obtain a draft for the amount of the sale. The plaintiffs could have protected themselves by refusing to deliver the goods until the draft was given them. Had Jones drawn drafts not corresponding with the terms of the letter, the defendant would not have been obliged to pay them. I cannot see that he should be liable when no draft was drawn.

(16 App. Div. 90.)

### HALPERN v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

TRIAL—IMPROPER REMARKS OF COUNSEL.
    A verdict for plaintiff will be set aside by the appellate court where plaintiff's counsel, in summing up, stated as facts matters as to which there was no evidence, and defendant's counsel, when he attempted to prevent such statements, was told by the court to wait until the summing up was finished.

Appeal from trial term, Kings county.

Action by Philip Halpern, as administrator of Rebecca Halpern, deceased, against the Nassau Electric Railroad Company, to recover damages for the death of decedent. From a judgment for $5,000 damages and $681.43 costs entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

James C. Church, for appellant.
G. Washbourne Smith, for respondent.

GOODRICH, P. J. In August, 1895, the plaintiff's wife was a passenger on one of the defendant's trolley cars, going towards Canarsie. The track runs through Rockaway avenue, and she alighted at Belmont avenue, which extends to, but does not cross, Rockaway avenue. She passed around the rear end of the car, intending to cross the other track and go into Belmont avenue; the car having stopped at the crossing. While crossing the track, she was struck and killed by a car coming from Canarsie, and the plaintiff recovered a verdict. We do not consider any other questions in the case than those which arise upon the summing up of the plaintiff's counsel, during which the following took place:

"Mr. Church: Your honor, the counsel makes a statement I would like to correct. The Court: You had better wait until he gets through, and then make the correction."

Mr. Smith continued his summing up, as follows:

"They killed that lady, Mrs. Halpern: making the one hundred and thirty-fourth victim of the trolley cars in Brooklyn. They kept it up until the people rose up in their might; until the press cried, 'Halt! Enough.' But they would not stop. First one and then another and then another ordinance were passed. I read one of them to you, passed on the 13th of March, 1895,

saying to these railroad companies: 'Stop killing our people. Run your cars slower. Bring them down to eight miles an hour.' They passed another ordinance, that the judge wouldn't allow me to put in, about fenders. Counsel gets crazy when I mention 'fender.' 'Don't, for heaven's sake, mention that word in my presence, or I will drop dead. Don't say anything about fender. I will get crazy. I will get sick.' He says he is sick. I don't know what it is,—whether it is the fender, or whether it is this great mass of evidence here brought against him. I think, if I were in his place, I would be in a hospital. It is enough to make a man sick on the other side."

After Mr. Smith finished his summing up, the following took place:

"Mr. Church: If your honor please, in obedience to your direction, I did not ask to correct counsel when he was summing up, for misstatements of fact; but when the counsel deliberately goes outside— The Court: Don't make any argument. Mr. Church: I just want to call your attention to this fact: That I think that I am justified in excepting to statements that have no foundation in the evidence. Counsel stated to the jury that there was a war between our company and the Long Island Railroad; that we were both rushing our trains at the fastest rate possible. The Court: That has nothing to do with the case. Mr. Church: I except to the counsel making that statement. I ask your honor to say to the jury that there is absolutely no evidence to that effect, and that it was an improper statement for counsel to lay before the jury in summing up. The Court: I will charge the jury that that has nothing to do with the case whatever, and they must disregard the statement, if he made it. I did not hear it. Mr. Church: He went on to state, if your honor pleases, this fact: That the people of Brooklyn had arisen, and passed an ordinance with relation to a fender,—requiring fenders to be placed upon the cars,—and that our car was not equipped with a fender, although your honor ruled the evidence out, and that that was the cause of this accident. I ask your honor to charge the jury that, when his evidence on that point had been ruled out, it was an improper statement to make to the jury. The Court: I charge the jury it has nothing to do with the case. Mr. Smith: I was stating, your honor, that they had no fender on the front of the car. The Court: You wandered from the case a little. I do not think, on the evidence, that the absence of the fender had anything to do with the accident, and I so charge the jury. Mr. Church: I ask your honor to charge that it was an improper statement to make to the jury. The Court: I am not called upon to charge on counsel's conduct. I can charge on the statements. Mr. Church: I have an exception to his remarks on that point."

There was no evidence in the case that 134 persons had been killed by the trolley cars in Brooklyn, nor that there was a war between the defendant company and the Long Island Railroad Company in respect to rushing trains at any rate of speed; nor was there any evidence that an ordinance had been passed requiring trolley cars to be equipped with fenders. There was evidence that there was no fender upon the car in question. When the defendant's counsel attempted to stop the reference of the plaintiff's counsel to excluded evidence, or to matters not in evidence, he was directed by the court to wait until the conclusion of the plaintiff's summing up. This was fair notice to plaintiff's counsel that he was transgressing the rules of propriety, but, instead of heeding the remonstrance, he persisted in making unjustifiable statements, not founded upon evidence, or founded upon excluded evidence. At the close of the plaintiff's summing up the defendant's counsel excepted to the remarks of the plaintiff's counsel before referred to. The court of appeals, in the case of Koelges v. Insurance Co., 57 N. Y. 638, set aside the plaintiff's verdict on the ground that the plaintiff's counsel read extracts from a pamphlet which was not in evidence, where the defendant's counsel objected to

the reading. In the case of Williams v. Railroad Co., 126 N. Y. 96, 26 N. E. 1048, the court of appeals set aside another verdict for the plaintiff, in an action to recover damages to premises caused by the erection of defendant's elevated railroad in front of them, because the plaintiff's counsel, in summing up, after referring to the "utter disregard of the rights of the private citizens by corporations," was permitted to read, under objection and exception, an article from a newspaper which purported to be an account of the killing of a boy by coming in contact with an electric light wire negligently left swinging for months from a pole in a city street, and which commented on the neglect and incompetency of city officials. In the course of the opinion, Judge Andrews, at page 103, 126 N. Y., and page 1049, 26 N. E., said:

"This privilege [summing up] is not beyond regulation by the court. It is subject to be controlled by the trial judge, in the exercise of a sound discretion, to prevent undue prolixity, waste of time, or unseemly criticism. The privilege of counsel, however, does not justify the introduction in his summing up of matters wholly immaterial and irrelevant to the matter to be decided, and which the jury have no right to consider in arriving at their verdict. The jury are sworn to render their verdict upon the evidence. The law sedulously guards against the introduction of irrelevant or incompetent evidence by which the rights of a party may be prejudiced. The purpose of these salutary rules might be defeated if jurors were allowed to consider facts not in evidence, and the privilege of counsel can never operate as a license to state to a jury facts not in evidence, or to present considerations which have no legitimate bearing upon the case, and which the jury would have no right to consider. Where counsel, in summing up, proceeds to dilate upon facts not in evidence, or to press upon the jury considerations which the jury would have no right to regard, it is, we conceive, the plain duty of the court, upon objection made, to interpose; and a refusal of the court to interpose, where otherwise the right of the party would be prejudiced, would be legal error. There are many cases sustaining this conclusion. Among them are Mitchum v. State, 11 Ga. 616; Tucker v. Henniker, 41 N. H. 317; Rolfe v. Rumford, 66 Me. 564. The reading by counsel, in summing up to the jury, of the newspaper article, 'Only a Boy Peddler,' was wholly irrelevant to the case. It could have been read for no purpose except to influence the jury against corporations, and to lead them, under the influence of a just anger excited by the incident narrated, to give liberal damages to the plaintiff in the case on trial. The refusal of the court to interfere, under the circumstances of this case, was legal error. The privilege of counsel, and the largest liberality in construing it, did not authorize such a totally irrelevant and prejudicial proceeding."

It will be observed, in the case just cited, when the counsel for the plaintiff commenced reading the article the defendant's counsel interposed, objected to the reading, and asked the court to prevent it; that the court overruled the objection; and that the defendant's counsel excepted. In the case at bar the defendant's counsel made a similar attempt, and was directed by the court to wait until the address to the jury was finished, and then make the objection; and, in obedience to this direction, defendant's counsel, at the close of the address, took his exception. We do not think that the learned court was justified in permitting the plaintiff's counsel to continue his remarks upon extraneous matters and excluded evidence. Indeed, it was his duty to have stopped the remarks of the plaintiff's counsel upon his own motion. It is impossible for us to believe otherwise than that the counsel introduced these subjects into his address for the purpose

of inflaming the minds of the jury against the defendant, as one of the trolley roads which he stated had killed 134 victims, and which had been racing its cars with the Long Island Railroad. We by no means intend to say that every irrelevant or improper comment made by a counsel through inadvertence or excess of zeal would require or justify setting aside a verdict, but in this case the conduct of the counsel was persistent and continuous, and his fault flagrant. We are not unmindful of the fact that by our decision the error of the plaintiff's counsel will be visited upon his client, but that fact cannot be permitted to affect our judgment; all the more that possibly this decision may have a salutary influence, in restraining the introduction by counsel, in their summing up, of matters not connected with the issues on trial, to the end that the rights of parties litigant may be protected, and not abused, and that juries may be limited to the consideration of evidence affecting the issues submitted to them, and to that evidence alone.

For the reasons stated, and without reference to any of the other questions involved in this appeal, the judgment must be reversed, with costs to the appellant to abide the event. All concur.