AARON BAGULLY, Respondent, *v.* THE MORNING JOURNAL ASSOCIA-
TION, Appellant.

*Libel — a reference by counsel, in summing up, to a verdict rendered in another case,*
*held to require a reversal.*

In an action for libel, the plaintiff's counsel in summing up to the jury stated,
" To show how juries give verdicts in libel suits, I have here a bound volume
of Court of Appeals cases from the library, and in the action entitled Le Huray
Sisters the jury rendered a verdict for the plaintiff for $10,000," and, upon the
court ruling that the statement was improper, further stated, " And the Court
of Appeals affirmed this judgment."

Upon the defendant's counsel taking an exception to the remarks, the plaintiff's
counsel said, " I withdraw my remark about that ten thousand dollar verdict
and ask you, gentlemen, not to consider it."

*Held,* that the conduct of the plaintiff's counsel in attempting to place improper
matter before the jury, was of such a persistent, continuous and flagrant char-
acter as to warrant a reversal of a judgment in favor of the plaintiff ;

That the charge of the court to the jury, that the matter referred to had nothing
to do with the case then on trial, and that they knew nothing about it, and were
not to give it any significance in arriving at their verdict, did not cure the
error.

APPEAL by the defendant, The Morning Journal Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 28th day of February, 1898, upon the verdict of a jury, and also from an order entered in said clerk's office on the 25th day of February, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Milton S. Guiterman,* for the appellant.

*J. Charles Weschler,* for the respondent.

HATCH, J.:

This is an action to recover damages for the alleged publication of a libel. The verdict which has been rendered is quite large, but in view of the testimony given upon the trial it was perhaps justified. We should have no difficulty in affirming this judgment, were it not for the action and statements made by the attorney for the plaintiff in his summing up to the jury.

It appears in the record that upon such address counsel for the plaintiff stated : " To show how juries give verdicts in libel suits, I have here a bound volume of Court of Appeals cases from the library and in the action entitled Le Huray Sisters, the jury rendered a verdict for the plaintiff for $10,000. The Court: That is entirely improper, and should not be made to the jury. I rule you have not the right to make that statement, Mr. Hallheimer. Mr. Hallheimer: And the Court of Appeals affirmed this judgment. Mr. Guiterman : I take an exception to those remarks. Mr. Hallheimer : I withdraw my remark about that ten thousand dollar verdict and ask you, gentlemen, not to consider it. Mr. Guiterman : I object to that statement again being made, and I take an exception to that remark being made to the jury."

There was no possible justification for the reference by the counsel for the plaintiff to the case in the Court of Appeals. It is not possible that any attorney can be so carried away in his zeal for the success of his client, or be so blinded in his sense of propriety, as to be unaware of the improper character of such matter. It was intended for no other purpose than to convey to the minds of the jury that in this class of cases the sum awarded as damages was always large. When the interruption of counsel came from the court, if he had before lacked perception of the impropriety of his course, it was then called sharply to his attention. Yet he not only disregarded the suggestion of the court, but he aggravated his offense, and it was only when exception was taken, and he became fearful that legal error might be predicated thereon, that he hastened to make what was evidently thought to be a correction of a remark which furnished good ground for exception. In the cor-

rection, however, the sting of the matter was left by the reiteration of the $10,000 verdict, thus making the correction substantially as offensive as was the original trespass upon the defendant's rights. It is true that the court in its charge to the jury stated that this matter had nothing to do with the case then on trial, and that they knew nothing about it, and were not to give it any significance in arriving at their verdict, as such course would be wrong. But in view of the peculiarly aggravated character of the offense of which plaintiff's counsel had been guilty, we are of opinion that the error committed cannot be said to have been corrected.

In *Halpern* v. *Nassau Electric R. R. Co.* (16 App. Div. 90, 94) a similar offense was considered by this court, and the charge in that case was that the objectionable matter had nothing whatever to do with the case, and the jury must disregard the statements. Yet we held that the error was not cured. We announce the rule there as we announce it here: "We by no means intend to say that every irrelevant or improper comment made by a counsel through inadvertence or excess of zeal would require or justify setting aside a verdict, but in this case the conduct of the counsel was persistent and continuous and his fault flagrant." So here the offense was even more persistent, continuous and flagrant than it was in the case to which the language quoted was applied. Indeed, in the present case, the flagrant character of the offense, which was continued after the court had interrupted, approached dangerously near, if it did not constitute, a contempt of court. Its persistent character was not in the least restrained, although the interruption came from court and counsel, until it became apparent that a fatal exception had been taken, when, as we have already observed, the attempt to correct was quite as bad as anything which had preceded it. We think that courts would be remiss in their duty if such flagrant violations as this were overlooked, and not only overlooked but rewarded.

It follows that the judgment should be reversed and a new trial granted, costs to abide the event.

All concurred, except BARTLETT, J., absent.

Judgment and order reversed and new trial granted, costs to abide the event.