SARAH E. STEWART, Respondent, *v.* METROPOLITAN STREET RAILWAY
COMPANY, Appellant.

*Trial — misstatement of the evidence and inflammatory and intemperate language of*
*counsel held to require a new trial — not obviated by the charge.*

In an action to recover damages for personal injuries sustained by the plaintiff
while alighting from one of the defendant's street cars, the plaintiff's counsel,
in summing up, persisted, notwithstanding that there was no evidence to that
effect, in stating that the conductor of the car had taken the names and
addresses of numerous passengers upon the car, who were not produced as
witnesses and whose names the defendant refused to disclose to the plaintiff's
counsel. He alluded to the defendant in his summing up as a "new and
gigantic corporation, monopolizing all the surface of all the streets of any
importance in the Greater City of New York and the surrounding suburban
cities," whose "projectors and inventors" had acquired "princely wealth"
by new methods of transit which brought "corresponding dangers to human
life and.limb," blocking our calendars with damage cases, and requiring to be
taught by the jury the wholesome lesson "to settle when wrong and to com-
promise a suit when in doubt." He also alluded to the stenographer who was
taking down the summing up at the instance of the defendant's counsel, as
"the taxpayers' stenographer," who was transcribing the speech at the expense
of the jury, "at your expense and mine, gentlemen, a stenographer paid by
the taxpayers of this county, to take down my speech." The trial justice,
when exception was taken to the foregoing statements, repeatedly informed the
plaintiff's counsel that he must confine himself to the facts in the case and, in
his charge to the jury, he stated, "in case either counsel in summing up stated
facts that were not proven on the trial, or in case either counsel gave a recol-
lection of the facts which disagree with the recollection of the jury, the jury
must disregard those statements and take their own recollection of the facts."
The jury rendered a verdict in favor of the plaintiff.
*Held,* that the language of the plaintiff's counsel was so unusual and extraordi-
nary in its inflammatory and intemperate nature as to require a new trial in
the interests of justice;
That the prejudicial effect of such statements on the jury had not been suffi-
ciently counteracted by the charge of the trial justice.
GOODRICH, P. J., dissented.

APPEAL by the defendant, the Metropolitan Street Railway Com-
pany, from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of the county of Westchester
on the 6th day of July, 1901, upon the verdict of a jury for $20,000,
and also from an order entered in said clerk's office on the 18th day

of July, 1901, denying the defendant's motion for a new trial made upon the minutes.

*Charles F. Brown* and *Henry A. Robinson* [*Theodore H. Lord* and *Addison C. Ormsbee* with them on the brief], for the appellant.

*John M. Digney,* for the respondent.

HIRSCHBERG, J.:

The plaintiff's judgment was entered on the verdict of a jury in support of a claim for damages on account of the defendant's negligence. The plaintiff was a passenger on a Lexington avenue car going north, in the borough of Manhattan, on the afternoon of January 31, 1900, and the accident occurred as she was alighting, or as she was about to alight, at Forty-fifth street. There was evidence which required the submission to the jury of the respective questions of negligence and contributory negligence, and while the verdict rendered was a large one, the undisputed injury was severe and permanent. The judgment and order, however, cannot be sustained inasmuch as the conduct of the plaintiff's counsel in summing up the case was so unusual and extraordinary in its inflammatory and intemperate nature as to require a new trial in the interests of justice.

The car in question was greatly overcrowded, all the seats occupied, and the aisle and rear platform packed with standing passengers. When the accident happened the conductor left the car, and went with a crowd which gathered from the street about the plaintiff. By some of these persons she was assisted or carried to her home. Another conductor accompanied the car on its trip north from Forty-fifth street. There was no evidence tending in any way to indicate that the names and addresses of any of the passengers had been taken by the conductor, with a single possible exception. There was evidence that he took the names of those who were on the street after the accident, and inferentially that in so doing he took the name of the only passenger who was proven to have left the car at Forty-fifth street besides the plaintiff and a lady who was with her, and this passenger was examined as a witness by the defendant upon the trial. There was accordingly no

evidence whatever that the conductor or any one else took the name or address of a single passenger who was not produced by the defendant as a witness upon the trial.   Nevertheless the counsel in summing up persisted in the statement that the evidence had established the fact that the conductor had taken the names and addresses of numerous passengers, who were not produced as witnesses, and whose names would not be disclosed to him on application.   He said : " Who has got the names and addresses?   I will tell you. Did you hear the answer *from that conductor ?*   I will tell you who has got them.   The company.   ' Will they give them to me?'   Go and ask them.   Go and ask their business manager. Do you think you would get an answer such as you would expect from a learned and polished gentleman?   No, you would get an answer that would impress you that every person connected with the company was — Mr. Brennan : I object to this as not a legitimate summing up.   There is no evidence of anything of that kind before the jury.   The Court: *I think you had better direct the attention of the jury to the facts in the case.*   Mr. Digney : I will comment *upon the evidence,* your Honor.   You see he don't want any speech-making.   I will *stick to the evidence.*   You heard me ask that conductor who got the names when he left the car and traveled up the street   I asked him, ' Were you taking down the names and addresses *of those who were on that car ?'*   ' Yes.' ' What were you doing on Forty-fifth street?'   ' Taking the names and addresses of those who were on the car.'   Is that in evidence? Mr. Brennan : No, sir.   Mr. Digney : I ask the stenographer to refer to the evidence of the conductor, if the court please.   The Court: I cannot permit that.   I will leave it to the jury.   *I will take your statement* and the *responsibility* for it must be on *you.*   Mr. Digney : I asked that conductor what he was doing.   You must recall it.   ' Were you taking the names and addresses?' ' Yes.'   And to-day who has got the names and addresses of *every passenger on that car ?*   Of the *forty-five men whom he says were there,* how many were produced?   I will tell you.   Just as many as this corporation wanted and no more.   There was no *passenger on the car* of the *forty-five of those whose names this conductor swears he took* that could not have been produced in court to-day. Are they here ?   *   *   *   Who do they produce of the *forty-five*

whom the conductor *said was on that car*, and whose names and addresses *he swore he took?* How many do they produce? Mr. Brennan: We submit there is no evidence to warrant that statement. The Court: I do not think there is any evidence *of the number.* There *is evidence* that it was the conductor's duty to take the names of witnesses. Mr. Daly: I think Mr. Digney has a little too many in the number forty-five. The Court: There is no evidence *how many he did take.* Mr. Digney: Well, he did take the names and addresses, and while Mrs. Stewart was in the throes of agony, her clothes being cut from her body, under the influence of chloroform, this defendant was building up its case for you to-day. Within one week after that accident it had been completed. How many of those whose names and addresses were taken are here, and *why are they not here?* One man alone of all the names appears here before you as a witness, Mr. Harnett. And that is why I wish to repeat it that the position of this defendant is unique among all the litigants that appear in courts of law. That is the position between a private litigant and this hydra-headed corporation."

Contrasting this address with the actual examination of the conductor by the learned counsel, I find the following as the entire cross-examination: " *Cross-examination — to Mr. Digney:* It is pretty hard to tell how many passengers were on the car at that time. My name is Caldwell. *To the Court:* The car was then full; people standing up in the aisle. *To Mr. Digney:* It was not packed in the aisle."

Neither on direct nor cross-examination was the conductor asked a single question on the subject of taking the names and addresses of either witnesses or passengers, nor does the case contain any evidence to the effect that it was his duty to take the names of witnesses. There was evidence, as I have said, from another witness that after the accident the conductor, having left the car, did take the names of those upon the street who gathered around the plaintiff and aided in carrying her home, among whom was the one passenger, Mr. Harnett, who left the car at Forty-fifth street, and who was produced as a witness. Neither he nor the conductor testified that the latter took his name; and as I have said no one testified at all upon the subject of taking names and addresses of any of the others who were passengers upon the car.

It is impossible to believe that the defendant was not prejudiced by this persistent repetition, notwithstanding the admonitions of the court, of the unjust and wholly unfounded statement that the defendant was in possession of, but had suppressed for some improper purpose, testimony bearing upon the accident. Both the counsel's associate (Mr. Daly) and the court were apparently deceived by it into the belief that there was at least *some evidence* of the kind stated, the number of witnesses only being at fault; and under such circumstances it would be unreasonable to suppose that the jury would know what was the literal fact, viz., that there was no evidence whatever that the company was in possession of the name of a single individual who was on the car, and whom it had failed to produce as a witness. The result of what occurred was that the matter went to the jury with an inadvertent but necessarily prejudicial judicial confirmation of the counsel's error. As the matter was left to the jury it was with the understanding that the court adopted the statement of the counsel, leaving with him the responsibility for its accuracy; that the evidence did establish the fact that it was the conductor's duty to take the names of the passengers on the car as witnesses; that he had done so in obedience to his duty, the number of names secured alone being in dispute; that the evidence of these witnesses was improperly suppressed by the defendant; and that in being thus able to accomplish the successful suppression of the truth the defendant occupied a unique position among the litigants in our courts.

The matter under consideration was vital to the main issue. There was a sharp conflict as to how the accident happened, and the result depended upon whether the jury believed that the car stopped with a sudden jolt, as the plaintiff claimed, or without any jar, as the defendant contended. The plaintiff did not produce the lady who was with her at the time, and the remarks of the counsel were evidently intended to destroy the unfavorable impression created by that fact, and at the same time to convey the idea that the defendant was in possession of the names and addresses of passengers on the car whose evidence, if given, would have tended to corroborate the plaintiff's theory. The defendant was gratuitously doubly charged with failing to produce the witnesses, and with an unwillingness to even divulge the names upon reasonable application.

There were other features of the counsel's address which color and emphasize what has been referred to. The defendant was alluded to as a "new and gigantic corporation, monopolizing all the surface of all the streets of any importance in the Greater City of New York and the surrounding suburban cities," whose "projectors and inventors" had acquired "princely wealth" by new methods of transit which brought "corresponding dangers to human life and limb," blocking our calendars with damage cases, and requiring to be taught by the jury the wholesome lesson "to settle when wrong and to compromise a suit when in doubt." The stenographer engaged in taking down the address was referred to as "the taxpayers' stenographer," who was transcribing the speech at the expense of the jury, "at your expense and mine, gentlemen, a stenographer paid by the taxpayers of this county, to take down my speech." This statement was repeated in substance after the court, on defendant's objection, had ruled that it was improper, and was finally stopped only by the court saying : "You had better confine yourself to the facts in the case. I assume if you get a judgment you want to keep it. You don't want to have it reversed. If so, confine yourself to the facts in the case. The counsel has a right to have the speech taken down."

In the charge of the learned trial justice the jury was told, at the request of the plaintiff's associate counsel, that "in case either counsel in summing up stated facts that were not proven on the trial, or in case either counsel gave a recollection of the facts which disagree with the recollection of the jury, the jury must disregard those statements and take their own recollection of the facts," but beyond this no attempt was made to correct the natural effect of what was called in *People* v. *Mull* (167 N. Y. 247, 253), "vituperation and unsupported prejudicial statement." The repeated detailed and circumstantial references to a number of witnesses known to the defendant but uncalled, were not cured, nor was the jury instructed to disregard them, and the deliberations of the jury were accordingly held under the influence of an exceedingly prejudicial misapprehension, which the plaintiff's counsel had persistently created without the slightest foundation in fact or reason. The unfavorable impression which this conduct was both designed and calculated to produce was necessarily heightened and inflamed by the unrebuked denuncia-

tions of the defendant as a corporation, which have been pointed out, and by the repeated statements that the trial was conducted on the part of the defendant at an unnecessary personal expense to the members of the jury as taxpayers.    That under such circumstances a new trial should be granted has been often held.    (*Koelges* v. *Guardian Life Ins. Co.*, 57 N. Y. 638; *Williams* v. *B. E. R. R. Co.*, 126 id. 96; *People* v. *Fielding*, 158 id. 542; *Halpern* v. *Nassau Electric R. R. Co.*, 16 App. Div. 90; *Bagully* v. *Morning Journal Assn.*, 38 id. 522.)

I am not unmindful of the fact that in the opinion denying the defendant's motion for a new trial the learned trial justice has stated as follows: " I think it would be an abuse of judicial discretion to grant a new trial because of the remarks of the plaintiff's counsel in his summing up ; in his zeal he went to some extent outside of the record, but I am satisfied that this was done inadvertently, and the court having promptly corrected his statements, I am entirely satisfied that no prejudicial effect was exerted upon the jury."    This opinion is entitled to very great weight, and in many cases would be controlling.    The fact remains, however, that the learned court labored under the misapprehension that there was some evidence in the case in regard to witnesses whose names had been procured by the defendant, but who had not been produced by it, and that the misstatement in that respect was not cured.    The court cannot be said to have " corrected " a misstatement which virtually charged the defendant with deliberately concealing the witnesses to an accident when it accepted the statement on the responsibility of the counsel, and merely suggested that there was no proof of the number, and no exception is necessary to justify the reversal of the order denying a new trial if in furtherance of justice.    (*Vogedes* v. *Beakes*, 38 App. Div. 380.)    While the widest latitude in argument should be allowed to counsel, so long as the argument is founded upon facts which are either proven or may be fairly inferred, it is evident that an orderly trial requires that some restraint should be imposed.    This reasonable limitation is certainly exceeded when passion and prejudice are excited by allegations of misconduct in a litigant, which are wholly unfounded in fact, and it is quite obvious that no court, however careful and conscientious, can be assured

with certainty that an unfair result has not been effected by an unfair trial.

The judgment and order should be reversed.

All concurred, except GOODRICH, P. J., who read for affirmance.

GOODRICH, P. J. (dissenting):

I cannot concur in the opinion of Mr. Justice HIRSCHBERG. It is true that the counsel for the respondent went out of the record in summing up and introduced matter not in evidence. If there had been no action by the court, or if the court had refused to correct the counsel, the case would have required our interposition. The question in my mind is whether the court did not act as required by the case of *Williams* v. *B. E. R. R. Co.* (126 N. Y. 96), where the court said (pp. 103, 104): " Where counsel in summing up proceeds to dilate upon facts not in evidence, or to press upon the jury considerations which the jury would have no right to regard, it is, we conceive, the plain duty of the court, upon objection made, to interpose, and a *refusal of the court to interpose*, where otherwise the right of the party would be prejudiced, would be legal error. * * * The reading by counsel * * * of the newspaper article 'Only a Boy Peddler,' was wholly irrelevant to the case. * * * The refusal of the court to interfere, under the circumstances of this case, was legal error." So, also, in *People* v. *Mull* (167 N. Y. 247, 255) it was said: " We do not mean to say that such remarks of counsel are not within the power of the court to cure either by prompt rebuke, or by instructing the jury to disregard them, or, better, by both methods. In most cases, no doubt, it can be done. The difficulty here is that the remarks of counsel passed without rebuke or dissent from the court, notwithstanding the objection of the defendant's counsel, and thus apparently received the sanction of the court instead of its severe condemnation."

In the case at bar the court did not refuse to interpose. When defendant's counsel objected to parts of the summing up, the court said to the plaintiff's counsel: " I think you had better direct the attention of the jury to the facts in the case," and the defendant's counsel did not thereafter except. At another place, when the defendant's counsel objected to the statement as to the number of passengers in the car whose names and addresses the conductor

took, and also objected that there was no evidence to warrant the statement, the court said: "I do not think there is any evidence of the number. There is evidence that it was the conductor's duty to take the names of witnesses." And the defendant's counsel did not thereafter except.

When plaintiff's counsel stated that the defendant's counsel required the court stenographer, at public expense, to take down the plaintiff's summing up, objection was made, exception taken, and the court said: "It is the stenographer's duty to do that, if he is requested to do it, and no criticism can be made because of its being done." Defendant's counsel made no exception thereto. The same thing was true when the plaintiff's counsel made some further objection and exception to a reference to the stenographer, and this again was corrected by the court in saying: "That is not proper. It does not cost the county anything."

At the close of the charge the plaintiff's counsel, possibly because he realized that he had transcended his privilege, requested the court to charge "that in case either counsel in summing up stated facts that were not proven on the trial, or in case either counsel gave a recollection of the facts which disagree with the recollection of the jury, the jury must disregard those statements and take their own recollection of the facts. The Court: Yes, I charge that. The duty of counsel is to aid the jury, but if your recollection distinctly agrees* with them, of course that must prevail."

In view of the fact that no exception was taken by defendant's counsel after the correcting instruction of the court during the summing up, or after the court had charged as requested, I cannot come to any conclusion except that the defendant's counsel was satisfied by the action of the court, and that the court properly instructed and charged; and that the error of plaintiff's counsel, if any, was neutralized and corrected by such rulings. There is no legal error which requires reversal.

In this view I am confirmed by the opinion of the learned justice, rendered upon the reserve motion for nonsuit, wherein he said: "I think it would be an abuse of judicial discretion to grant a new trial because of the remarks of the plaintiff's counsel in his summing

---

\* *Sic.*

up ; in his zeal he went to some extent outside of the record, but I am satisfied that this was done inadvertently, and the court having promptly corrected his statements, I am entirely satisfied that no prejudicial effect was exerted upon the jury."

Judgment and order reversed and new trial granted, costs to abide the event.