ELEANOR STRICKLAND, an Infant, by SAMUEL STRICKLAND, her Guardian ad Litem, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Contributory negligence — injury to a child crossing a railroad — the duty of a flagman stationed where two streets cross is confined to the limits of the street intersection — improper statement by counsel to the jury.*

A flagman stationed by a steam railroad company at a point where two streets through one of which a railroad runs, intersect, owes no duty to a person who attempts to cross the street through which the railroad runs outside the limits of the intersecting street.

In an action brought to recover damages for personal injuries sustained by a girl eight years of age, in consequence of being struck by one of the defendant's railroad trains at or near a point where two streets, on one of which the defendant operated two railroad tracks, intersected, it appeared that the plaintiff approached the tracks from the north and stopped just north of the tracks while a west-bound train was passing on the north track; that after the west-bound train had passed the plaintiff proceeded to cross the tracks and was struck, by an east-bound train traveling on the south track, just as she stepped upon that track.

The accident occurred in daylight, and there was nothing to obstruct the plaintiff's view to the west except the passing west-bound train.   When the rear of that train had passed the plaintiff had a constantly enlarging view of the approaching train which struck her.   There was no proof that the plaintiff looked toward the west after the west-bound train had passed.

*Held,* that if the plaintiff did not see the train which struck her, she was negligent, and that if she did see it and attempted to pass in front of it, she was equally negligent;

That a statement made by the plaintiff's counsel during his summing up that the defendant railroad maintained one of its officers in the Senate of the United States, and that the President of the United States was obliged to bow to its will, was improper and unprofessional and justified the court in setting aside a verdict rendered in favor of the plaintiff. Per WILLIAMS, J.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 21st day of October, 1902, upon the verdict of a jury for $8,500, and also from an order entered in said clerk's office on the 21st day of October, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Charles A. Pooley,* for the appellant.

*Eugene W. Harrington* and *E. M. Bartlett,* for the respondent.

WILLIAMS, J.:

The judgment and order should be reversed and a new trial granted, with costs to appellant to abide event.

The action is to recover damages for injuries to the plaintiff alleged to have been caused by the negligence of the defendant. The accident occurred April 30, 1902, at six o'clock in the afternoon at or near the junction of Church and Genesee streets in the city of Buffalo, N. Y. The tracks of the defendant in this locality lie along the center of Church street, double tracks. These tracks were used for the belt line trains as well as others. The plaintiff at the time of the accident was eight years of age. She had been across the tracks from her home to the place where her father worked to see him, and was on her way back home when she was struck by a belt line train while attempting to cross the tracks. The only ground of negligence submitted to the jury was neglect of duty on the part of the flagman located at the Genesee street crossing of the defendant's tracks. The speed of the train and the failure to give signals were eliminated from the case. The court, in the charge, said : " The defendant was not compelled to have a flagman at this crossing  *  *  *,  but when it does put a flagman

upon a crossing of this kind, then the law imposes upon the defendant the duty of seeing that this flagman uses reasonable care and diligence with reference to this duty at this particular place. It is an active duty. He must be vigilant, so that he may prevent, if possible, injuries to persons who are pedestrians crossing the track; if the defendant stations a flagman, it becomes charged with the duty of warning pedestrians who are crossing or using the street. * * * The particular negligence or omission of duty upon the part of the defendant is that this man was not there in the discharge of his duty as flagman at the time this injury occurred to this little girl; that is the neglect of duty upon the part of the defendant to which your attention is invited in this case."

The duty of the flagman was to look after the Genesee street crossing and to warn persons crossing the railroad tracks along that street. He had no duty to perform as to Church street, along which the tracks laid, except so far as such street and tracks were within the limits of Genesee street. Under the charge, therefore, the plaintiff's right to recover was dependent upon the accident having occurred while the girl was attempting to cross the tracks along that street. While she had the legal right to cross Church street and the tracks at any point she saw fit, still the defendant owed her no duty so far as the flagman was concerned if she attempted to cross outside the limits of Genesee street. The verdict of the jury can, therefore, be upheld only upon a finding that the accident occurred while the girl was crossing the tracks along Genesee street. Such a finding was contrary to the evidence in the case, if not wholly without evidence to support it. The father testifies, it is true, that the last he saw of the girl she was standing near the crosswalk on Genesee street. He turned away then, and did not see what occurred afterwards, up to the time of the accident. All the other witnesses in the case on both sides testify that the girl had left the crosswalk and was going across the pavement directly towards her home, and was outside of Genesee street when she was struck. The father says he stood north of Genesee street, in front of the place where he worked, and saw the girl go across Genesee street straight towards home, and stop just north of the tracks while the Michigan Central train was going past

towards the west, on the north track. The map shows that this place where it is claimed the girl stood *was* in a direct line substantially between the place where the father stood and her home. When the Michigan Central train passed the girl started to cross the tracks and having approached and crossed the north track and crossed the space between the two tracks, she was struck as she stepped upon the south track. When she approached the tracks and crossed over she evidently went directly towards home, and if she did, the map shows she must have been some distance outside the boundaries of Genesee street. If she continued along the crosswalk on Genesee street she would have been going in a direction away from and not towards her home. There is no evidence in the case tending to show that she continued in Genesee street until she was struck. The only inference permissible, upon plaintiff's theory, is that she started directly towards home, while the evidence in the case very strongly tends to show that the place where she stood while the Michigan Central train was passing, was a considerable distance south of Genesee street, directly opposite her home. Under these circumstances it cannot be said that the neglect of any duty by the defendant's flagman was the cause of the plaintiff's injuries, unless it be claimed that the duty of the flagman to warn foot passengers extended to persons crossing Church street outside the limits of Genesee street, and we cannot assent to such a proposition. We conclude, therefore, that the finding by the jury that the plaintiff's injuries were caused by the negligence of the defendant was unsupported by the evidence in the case under the charge of the court.

The verdict of the jury must have been based upon a finding that the girl was free from contributory negligence. The case was submitted to the jury upon the theory that she was of such age and intelligence that her own performance of duty, and not that of her parents, was to be considered as bearing upon the question of contributory negligence. This being so, the evidence fails to show that the care and caution required by law was exercised by the girl. It was daylight. There was no obstruction to her view, except the passing Michigan Central train. When the rear of that train passed by she had a continually enlarging view of the belt line train approaching her. There is no proof whatever that she looked towards the west after the first train passed by before she attempted to cross. There was some

evidence that she looked only to the east.   Certainly if she did look to the west after the Michigan Central train passed, she must have seen the belt line train coming.   It was so close to her before she came to the south track that she had hardly stepped upon that track at all when she was struck.   It was right upon her.   If she did not see it she was negligent.   If she did see it, and attempted to pass over in front of it, she was equally negligent.   The verdict was contrary to the evidence upon this branch of the case.

During the closing address by the plaintiff's counsel he told the jury that the defendant railroad company maintained one of its officers in the Senate of the United States, and that the President of the United States must bow to its will.   There was no proof in the case warranting this statement and nothing to excuse it.   The counsel knew it was improper and made it for the purpose of influencing the jury. He could have had no other object.   It was unprofessional, and may well have influenced the jury in arriving at their verdict.   The appellate courts have frequently expressed themselves with reference to improper suggestions made to juries in addresses by counsel. (*Halpern* v. *N. E. R. R. Co.*, 16 App. Div. 90 ; *Klinker* v. *Third Ave. R. R. Co.*, 26 id. 322 ; *Bagully* v. *M. J. Assn.*, 38 id. 522 ; *Stewart* v. *Met. St. Ry. Co.*, 72 id. 459 ; *Sweeney* v. *N. Y. C. & H. R. R. R. Co.*, 83 id. 565.  See, also, *Cosselmon* v. *Dunfee* 172 N. Y. 507 ; *Dimon* v. *N. Y. C. & H. R. R. R. Co.*, 173 id. 356.)

There is no reason for further *words* on the subject.   The courts should *act* by setting aside verdicts where this improper practice is employed.

Our conclusion is that the judgment and order should be reversed for the reasons hereinbefore suggested and a new trial be granted.

All concurred ; McLENNAN, P. J., SPRING and HISCOCK, JJ., upon first and second grounds only.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event, upon questions of law and fact.