STRICKLAND v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 17, 1903.)

1. RAILROADS—STREET CROSSINGS—FLAGMAN—DUTIES.

Where a railroad company maintains a flagman at a street crossing, where it is not compelled to have one, the flagman's duty is limited to warning persons crossing the tracks on that particular street, and his failure to warn a person crossing outside the limits of the street is not negligence.

2. SAME—INJURY TO PEDESTRIAN—EVIDENCE.

In an action against a railroad for injuries alleged to have been caused by the negligence of a flagman stationed at a street crossing where the company was not compelled to maintain one, evidence considered, and held insufficient to show that plaintiff was injured while upon the street at the crossing of which the flagman was stationed.

Appeal from Trial Term, Erie County.

Action by Eleanor Strickland, by guardian ad litem, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

¶ 1. See Railroads, vol. 41, Cent. Dig. § 976.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Pooley & Spratt, for appellant.

Eugene W. Harrington and E. M. Bartlett, for respondent.

WILLIAMS, J.  The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event.

The action is to recover damages for injuries to the plaintiff, alleged to have been caused by the negligence of the defendant.  The accident occurred April 30, 1902, at 6 o'clock in the afternoon, at or near the junction of Church and Genesee streets in the city of Buffalo, N. Y.  The tracks of the defendant in this locality lie along the center of Church street—double tracks.  These tracks were used for the Belt Line trains as well as others.  The plaintiff at the time of the accident was eight years of age.  She had been across the tracks from her home to the place where her father worked, to see him, and was on her way back home, when she was struck by a Belt Line train while attempting to cross the tracks.  The only ground of negligence submitted to the jury was neglect of duty on the part of the flagman located at the Genesee street crossing of the defendant's tracks.  The speed of the train and the failure to give signals were eliminated from the case.  The court, in the charge, said:

"The defendant was not compelled to have a flagman at this crossing, * * * but, when it does put a flagman upon a crossing of this kind, then the law imposes upon the defendant the duty of seeing that this flagman uses reasonable care and diligence with reference to his duty at this particular place.  It is an active duty.  He must be vigilant, so that he may prevent, if possible, injuries to persons who are pedestrians crossing the track.  If the defendant stations a flagman, it becomes charged with the duty of warning pedestrians who are crossing or using the street.  * * *  The particular negligence or omission of duty upon the part of the defendant is that this man was not there in the discharge of his duty as flagman at the time this injury occurred to this little girl.  That is the neglect of duty upon the part of the defendant to which your attention is invited in this case."

The duty of the flagman was to look after the Genesee street crossing, and to warn persons crossing the railroad tracks along that street.  He had no duty to perform as to Church street, along which the tracks laid, except so far as such street and tracks were within the limits of Genesee street.  Under the charge, therefore, the plaintiff's right to recover was dependent upon the accident having occurred while the girl was attempting to cross the tracks along that street.  While she had the legal right to cross Church street and the tracks at any point she saw fit, still the defendant owed her no duty, so far as the flagman was concerned, if she attempted to cross outside the limits of Genesee street.  The verdict of the jury can therefore be upheld only upon a finding that the accident occurred while the girl was crossing the tracks along Genesee street.  Such a finding was contrary to the evidence in the case, if not wholly without evidence to support it.  The father testifies, it is true, that, the last he saw of the girl, she was standing near the cross-walk on Genesee street.  He turned away then, and did not see what occurred afterwards, up to the time of the accident.  All the other witnesses in the case on

both sides testify that the girl had left the cross-walk and was going across the pavement, directly towards her home, and was outside of Genesee street, when she was struck. The father says he stood north of Genesee street, in front of the place where he worked, and saw the girl go across Genesee street, straight towards home, and stop just north of the tracks while the Michigan Central train was going past towards the west, on the north track. The map shows this place where it is claimed the girl stood was in a direct line, substantially, between the place where the father stood and her home. When the Michigan Central train passed, the girl started to cross the tracks; and, having approached and crossed the north track, and crossed the space between the two tracks, she was struck as she stepped upon the south track. When she approached the tracks and crossed over, she evidently went directly towards home; and, if she did, the map shows she must have been some distance outside the boundaries of Genesee street. If she continued along the crosswalk on Genesee street, she would have been going in a direction away from, and not towards, her home. There is no evidence in the case tending to show that she continued in Genesee street until she was struck. The only inference permissible, upon plaintiff's theory, is that she started directly towards home, while the evidence in the case very strongly tends to show that the place where she stood while the Michigan Central train was passing was a considerable distance south of Genesee street, directly opposite her home. Under these circumstances, it cannot be said that the neglect of any duty by the defendant as to a flagman was the cause of the plaintiff's injuries, unless it be claimed that the duty of the flagman to warn foot passengers extended to persons crossing Church street outside the limits of Genesee street, and we cannot assent to such a proposition. We conclude, therefore, that the finding by the jury that the plaintiff's injuries were caused by the negligence of the defendant was unsupported by the evidence in the case, under the charge of the court. The verdict of the jury must have been based upon a finding that the girl was free from contributory negligence. The case was submitted to the jury upon the theory that she was of such age and intelligence that her own performance of duty, and not that of her parents, was to be considered as bearing upon the question of contributory negligence. This being so, the evidence fails to show that the care and caution required by law were exercised by the girl. It was daylight. There was no obstruction to her view, except the passing Michigan Central train. When the rear of that train passed by, she had a continually enlarging view of the Belt Line train approaching her. There is no proof whatever that she looked towards the east after the first train passed by before she attempted to cross. There was some evidence that she looked only to the west. Certainly, if she did look to the east after the Michigan Central train passed, she must have seen the Belt Line train coming. It was so close to her before she came to the south track that she had hardly stepped upon that track at all when she was struck. It was right upon her. If she did not see it, she was negligent. If she did see it, and attempted to pass over in front of it, she was equally negligent.

The verdict was contrary to the evidence upon this branch of the case.

During the closing address by the plaintiff's counsel, he told the jury that the defendant railroad so maintained one of its officers in the Senate of the United States, and that the President of the United States must bow to its will. There was no proof in the case warranting this statement, and nothing to excuse it. The counsel knew it was improper, and made it for the purpose of influencing the jury. He could have had no other object. It was unprofessional, and may well have influenced the jury in arriving at their verdict. The appellate courts have frequently expressed themselves with reference to improper suggestions made to juries in addresses by counsel. Halpern, Adm'r, v. N. E. R. Co., 16 App. Div. 90, 45 N. Y. Supp. 134; Klinker v. Third Ave. R. Co., 26 App. Div. 334, 49 N. Y. Supp. 793; Bagulley v. M. J. Ass'n, 38 App. Div. 522, 56 N. Y. Supp. 605; Stewart v. Met. St. Ry. Co., 72 App. Div. 459, 76 N. Y. Supp. 540; Sweeney v. N. Y. C. & H. R. R. Co., 83 App. Div. 565, 81 N. Y. Supp. 1112. See, also, Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494; Dimon v. N. Y. C. & H. R. R. Co., 173 N. Y. 356, 66 N. E. 1. There is no reason for further words on the subject. The courts should act, by setting aside verdicts, where this improper practice is employed.

Our conclusion is that the judgment and order should be reversed for the reasons hereinbefore suggested, and a new trial be granted. All concur; McLENNAN, P. J., and SPRING and HISCOCK, JJ., on first and second grounds only.