(107 App. Div. 449.)

PEOPLE v. WOLF.

(Supreme Court, Appellate Division, First Department. September 29, 1905.)

1. CRIMINAL LAW—REMARKS OF PROSECUTING ATTORNEY.

Remarks of the prosecuting attorney to the jury cannot be made the basis of error, where they have no tendency to create greater passion or prejudice than the admitted facts in evidence created.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1663, 1676.]

2. SAME—RULINGS ON EVIDENCE—EXCEPTIONS.

Where, on a prosecution under an indictment, the court, on the complaint before the committing magistrate being offered in evidence and objected to, said that it was part of the record, and it was the same as though the indictment was being offered, and that he would admit it, and thereafter, on his attention being called to the matter by defendant, said, "I shall instruct the jury, and I do instruct them now, that the complaint is the same as an indictment," defendant, by failing to except or further object to the proof as thus limited, will be deemed to have acquiesced in the ruling limiting the purpose for which the evidence was received.

3. SAME—ADMISSION OF EVIDENCE—HARMLESS ERROR.

Any error in admission of evidence is harmless, where it relates to questions quite aside from the age of the complainant, the only issue not admitted.

McLaughlin and Ingraham, JJ., dissenting.

Appeal from Court of General Sessions, New York County.

Sadie Wolf was convicted of abduction, and appeals. Affirmed.

The evidence showed that the defendant was the proprietress of a house of prostitution, and that she had received the abducted girl, Katie Garfinkel, into this house and detained her there three days, and that during that period the girl was compelled to prostitute herself. Upon the trial a witness, Paul Garfinkel, the foster father of the girl Katie, testified that she was born in Russia upon the 26th day of September, 1888. He also testified that he and his wife and the girl went from Russia to Hamburg, and came from Hamburg to New York upon the steamship Rotterdam, which reached New York City about July 1, 1891. Upon cross-examination, his attention was called to the original manifest of the steamship Rotterdam. From this manifest it appeared that the age of the girl, at the time of sailing, in June, 1891, was eight years. The witness Paul Garfinkel testified that he had given his own age and the ages of his wife and of the girl to officials at Hamburg. He swore, however, that he had then stated that the age of the girl was four years, and not eight years, as appeared by the manifest. It also appeared that the girl Katie had received a "certificate of employment" from the department of health, which was issued upon an affidavit of Paul Garfinkel, to the effect that Katie had been born September 26, 1887. It also appeared that the girl had made an application for employment, dated in April, 1904, in which she declared, over her own signature, that she was then 18 years of age. These

documents the ship's manifest with the captain's oath, the certificate of employment, and the girl's application, were all offered and received in evidence.

At the close of the charge, the following requests to charge were propounded by the defendant, and were disposed of as follows: "(23) The passenger act enacted by the Congress of the United States on August 2, 1882, provides: 'On the arrival of any steamship or other vessel within any collection district of the United States, the master thereof shall deliver to the officer of customs who first comes on board the vessel and makes demand therefor, a correct list signed by the master of all passengers taken on board the vessel at any foreign port or place, specifying separately the names of the cabin passengers, their age, sex, calling and the country of which they are citizens, and the number of pieces of baggage belonging to each passenger, and also the name, age, sex, calling and native country of each immigrant passenger or passengers, other than cabin passengers, and their intended destination or location and the number of pieces of baggage belonging to each passenger, and also the location of the compartment or space occupied by each of such passengers during the voyage; and if any of such passengers died on the voyage, the said list small specify the name, age, and cause of death of each deceased passenger; and a duplicate of the aforesaid list of passengers, verified by the oath of the master, shall, with the manifest of the cargo, be delivered by the master to the collector of customs on the entry of the vessel.' And, in this connection, the jury are bound to consider the passengers' manifest introduced in evidence here when determining the question of the age of Katie Garfinkel at the time of the alleged abduction.

"The Court: I think, instead of the word 'bound,' you ought to use the word 'may.' I think that would be more appropriate.

"Mr. Meyer: No.

"The Court: I refuse to charge in the language requested.

"Mr. Meyer: To which we except.

"Now we repeat the same request, 'and in this connection the jury may consider the passengers' manifest introduced in evidence here when determining the question of the age of Katie Garfinkel at the time of the alleged abduction.'

"The Court: Yes, I charge it in that form.

"(24) In considering the passengers' manifest introduced in evidence, the jury are also bound and required to take into consideration that the same is sworn to by the master of the vessel under oath.

"The Court: Certainly.

"(25) The presumption is that the master of the vessel swore truthfully and correctly at the time he made oath to the manifest introduced in evidence.

"The Court: Yes.

"(26) In determining the question of the age of Katie Garfinkel, the complaining witness in this case, the jury are bound to consider on the question of age the written declaration made by Katie Garfinkel in her application for a position to the Simpson-Crawford Company in the month of April, 1904, one month prior to the alleged abduction, wherein she in her own hand writing stated that she was at that time 18 years of age; and, furthermore, are also bound to consider the declaration of Katie Garfinkel on the witness stand that her foster father, Paul Garfinkel, three years prior to April, 1904, swore before an officer of the department of health of the city of New York that she was then at that time 14 years of age.

"The Court: Yes."

Argued before O'BRIEN, P. J. and HATCH, PATTERSON, McLAUGHLIN, and INGRAHAM, JJ.

Frederick B. House, for appellant.

Robert C. Taylor, for the People.

HATCH, J.  The defendant was convicted of the crime of abduction, under that part of section 282 of the Penal Code which provides as follows:

"A person who takes, receives, employs, harbors or uses, or causes or procures to be taken, received, employed or harbored or used, a female under the age of eighteen years, for the purpose of prostitution; * * * is guilty of abduction."

According to the testimony produced by the prosecution, the jury, in finding the defendant guilty, must have believed the girl who was the unfortunate victim of the crime was 15 years of age. The story of her ill treatment is so revolting that the details cannot in decency be repeated in a judicial opinion, and the defendant's participation therein is abundantly established by the evidence.

Several claimed errors are called to our attention in the proceedings had upon the trial. Prominent among these assignments of error are improper remarks claimed to have been made by the district attorney, both in his opening and closing addresses; the contention being that thereby the minds of the jury were inflamed and prejudiced against the defendant. Improper remarks made by a prosecuting officer in opening a case to the jury, or in summing up the same, can only be made the basis of error where they appear to have been of such a character as to have a natural tendency to inflame and arouse the passions and prejudices of the jury, and where the language used is not justified from a fair consideration of the evidence in the case. Where the evidence is of such a character that its bare recital operates to arouse the passions and prejudices of the jury or of a listener, it would not constitute error for the prosecuting officer to rehearse the evidence and comment upon the inferences fairly deducible therefrom, even though its effect were to increase with the jury feelings of passion and prejudice. The evidence which appears in this record is of such a character that no one with common feelings of humanity can read it without being prejudiced against every actor in the process resulting in the irretrievable ruin of the complainant. Nothing can be found in the address of the learned district attorney who conducted the prosecution, either in his opening to the jury or the summing up of the case, which had a tendency to create greater passion or prejudice than the admitted facts in evidence created. Under such circumstances, I do not think it can reasonably be said that the interests of the defendant were unduly prejudiced by what the district attorney said. What she admittedly did was sufficient to arouse the passion and prejudice of the jury to its utmost extent, and it seems quite improbable that the district attorney added anything thereto in any part which he took in the prosecution. Every nauseating and horrible detail stood admitted, save only one issue —that of the age of the girl. Upon such issue, it may be conceded that, if the affidavits used upon the examination before the police magistrate were introduced and read to the jury without qualification and as general evidence in the case, it would constitute reversible error. Such condition, however, is not the fact. When the testimony was first offered, objection being made thereto, the court said:

"It is a part of the record, and it is the same as if they were offering the indictment in the case. I will allow it."

When the attention of the court was again called to the matter by counsel for the defendant, the court, in ruling upon the subject, stated:

"I shall instruct the jury, and I do instruct them now, that the complaint in the police court is the same as an indictment."

To the qualification thus placed upon the evidence, and the limited purpose for which it was received, the defendant took no exception. Therefore no question was raised, as the only point to which the objection went was its competency as a whole and for any purpose. The court ruled upon that objection, sustaining it in part; and by failing to except or further object to the proof as thus limited the defendant must be deemed to have acquiesced therein. The ruling of the court rendered the whole of this testimony innocuous. It was treated for purposes of evidence the same as an indictment. The latter pleading proves nothing. It simply contains the charge which the defendant is called upon to answer. If there be nothing more, no offense is proved. The operative effect of the ruling of the court, therefore, was to receive the papers as evidence that a charge had been made against the defendant before the police magistrate, and for nothing else. If it was error so to admit it, it was nevertheless harmless, as no possible prejudice could arise out of it to the defendant, and error could not be predicated thereupon, within section 542 of the Code of Criminal Procedure, which, notwithstanding the decisions, still has some force to which effect may be given. People v. Silverman, 181 N. Y. 235, 73 N. E. 980.

In addition, it was orally stated upon the argument of this appeal by the learned district attorney, and not controverted by the defendant's counsel, although his attention was specifically directed thereto, that the record before the police magistrate was not read to the jury, and its contents were in no wise referred to or considered by them. Such action harmonizes with the ruling made by the court, as the only force left to the testimony was the fact of the charge, and that was not controverted. Consequently there was no necessity for reading or otherwise commenting upon it. Under such circumstances, I am of opinion that this court is not called upon to lay hold of such matter as constituting reversible error.

The charge of the learned court to the jury covered every view of the case that the defendant asked for or desired, save in one particular, and that related to the evidence concerning a ship's manifest. Upon that subject the defendant received a charge more favorable than that to which she was entitled, as the manifest was not admissible for any purpose. The evidence in the case bearing upon the age of the girl was all competent. As to everything else, the charge stands admitted. The evidence is clear and conclusive of the defendant's guilt. I am unable to find legal error; and, if there may have been irregularities upon the part of the district attorney in the trial of the case, they cannot be said to have operated to the prejudice of the defendant, or that they might have so operated.

It is claimed that other errors were committed; but they relate to questions quite aside from that involving the age of the complainant. If it be admitted that errors in the reception of evidence in these respects were committed, they are clearly harmless, and could not prejudice the defendant, as, aside from the issue of the age of the complainant, the case against the defendant stood admitted.

The judgment of conviction should therefore be affirmed.

O'BRIEN, P. J., and PATTERSON, J., concur.

McLAUGHLIN, J. (dissenting). I am unable to agree to an affirmance of this judgment.. The real, and substantially the only, issue litigated at the trial was the age of the complaining witness. If, at the time of the commission of the offense charged in the indictment, she were over 18 years of age, then the defendant is not guilty of the crime of which she has been convicted. A person charged with the commission of a crime is entitled to a fair trial, which is but another way of saying one conducted according to law. The trial which resulted in the defendant's conviction was not. as I read the record, conducted in this way. The learned assistant district attorney, not only in his opening remarks to the jury, but also in his closing address, did not confine himself to commenting upon the evidence, but went outside of it and used language which had a tendency to, and in all probability did, tend to excite their passions and prejudices against the defendant. This court and the Court of Appeals have heretofore disapproved of such practice and reversed judgments of conviction upon this ground alone. People · v. Bissert, 71 App. Div. 118, 75 N. Y. Supp. 630; People v. Fielding, 158 N. Y. 542, 53 N. E. 497, 46 L. R. A. 641, 70 Am. St. Rep. 495.

But, if this alleged error could be overlooked, which I do not think it should be, a much more serious one is presented in the admission of evidence. Prior to the finding of the indictment, a complaint was made, in the form of affidavits, to a police magistrate, accusing the defendant and others of the commission of a crime similar to the one for which she was convicted. At the trial which resulted in the defendant's conviction the learned assistant district attorney offered in evidence the record of the proceedings, including the affidavits, had before the magistrate. Objection was duly made and overruled, and an exception taken. There is no rule of which I am aware which makes such record competent evidence upon a trial under an indictment subsequently found. The witnesses who were sworn before the magistrate, and whose affidavits were introduced in evidence, were produced upon the trial. and an opportunity for examining them was afforded. The affidavits were not offered for the purpose of contradicting the witnesses. On the contrary, the only purpose was to corroborate, if possible. the statement of such witnesses as to the age of the complainant. A witness cannot be corroborated in this way. Connolly v. B. H. R.

R. Co., 179 N. Y. 7, 71 N. E. 265; Austin v. Bartlett, 178 N. Y. 310, 70 N. E. 855; Second Ward Savings Bank v. Shackman, 30 Wis. 313.

But it is suggested in the prevailing opinion that this alleged error was corrected, because the court, in overruling the objection and receiving such record, remarked:

"It is a part of the record, and is the same as if they were offering the indictment in the case."

And also subsequently said:

"I shall instruct the jury, and I do instruct them now, that the complaint in the police court is the same as an indictment."

Neither statement was correct. The record of the proceedings before the police magistrate was not a part of the record of the trial, and had nothing to do with it; nor was it in effect the same as an indictment. The proceeding before the police magistrate was for the purpose of ascertaining whether a crime had been committed, and, if so, whether there was sufficient evidence to justify holding the defendant until a grand jury had made further investigation. The indictment was the written declaration by a grand jury, not only that a crime had been committed, but accusing the defendant of committing it. The grand jury could receive only legal evidence. Section 256, Code Cr. Proc. The age of the complaining witness could not be established by evidence used before a committing magistrate, nor could the testimony of the witnesses at the trial be corroborated by affidavits previously made by them.

The acts of the defendant were of such a character as naturally and almost irresistibly to lead one to overlook or disregard settled rules of law, to the end that she may be punished. But, whatever may be her moral guilt, she was entitled to a fair trial, to be confronted with the witnesses against her, and to have the jury say, upon legal evidence, whether she was guilty of the crime for which she was placed upon trial. Unless the people could satisfy the jury beyond a reasonable doubt, after a trial conducted in this way, that she was guilty, then she was entitled to be discharged.

Upon both of the grounds suggested, therefore, I think the judgment of conviction should be reversed, and a new trial ordered.

INGRAHAM, J., concurs.